(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WILSON *v.* SELLERS, WARDEN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 16–6855. Argued October 30, 2017—Decided April 17, 2018

Petitioner Marion Wilson was convicted of murder and sentenced to death. He sought habeas relief in Georgia Superior Court, claiming that his counsel's ineffectiveness during sentencing violated the Sixth Amendment. The court denied the petition, in relevant part, because it concluded that counsel's performance was not deficient and had not prejudiced Wilson. The Georgia Supreme Court summarily denied his application for a certificate of probable cause to appeal. Wilson subsequently filed a federal habeas petition, raising the same ineffective-assistance claim. The District Court assumed that his counsel was deficient but deferred to the state habeas court's conclusion that any deficiencies did not prejudice Wilson. The Eleventh Circuit affirmed. First, however, the panel concluded that the District Court was wrong to "look though" the State Supreme Court's unexplained decision and assume that it rested on the grounds given in the state habeas court's opinion, rather than ask what arguments "could have supported" the State Supreme Court's summary decision. The en banc court agreed with the panel's methodology.

*Held*: A federal habeas court reviewing an unexplained state-court decision on the merits should "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. The State may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. Pp. 5–11.

 (a) In *Ylst* v. *Nunnemaker*, 501 U. S. 797, the Court held that where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. In *Ylst,*

where the last reasoned opinion on the claim explicitly imposed a
procedural default, the Court presumed that a later decision rejecting
the claim did not silently disregard that bar and consider the merits.

   Since *Ylst*, every Circuit to have considered the matter, but for the
Eleventh Circuit, has applied a "look through" presumption even
where the state courts did not apply a procedural bar to review, and
most Circuits applied the presumption prior to *Ylst*. The presump-
tion is often realistic, for state higher courts often issue summary de-
cisions when they have examined the lower court's reasoning and
found nothing significant with which they disagree. The presump-
tion also is often more efficiently applied than a contrary approach
that would require a federal court to imagine what might have been
the state court's supportive reasoning.

   The State argues that *Harrington* v. *Richter,* 562 U. S. 86, controls
here and that *Ylst* should apply, at most, where the federal habeas
court is trying to determine whether a state-court decision without
opinion rested on a state procedural ground or whether the state
court reached the merits of a federal issue. *Richter*, however, did not
directly concern the issue in this case—whether to "look through" the
silent state higher court opinion to the lower court's reasoned opinion
in order to determine the reasons for the higher court's decision. In
*Richter*, there was no lower court opinion to look to. And *Richter* does
not say that *Ylst*'s reasoning does not apply in the context of an un-
explained decision on the merits. Indeed, this Court has "looked
though" to lower court decisions in cases involving the merits. See,
*e.g.*, *Premo* v. *Moore,* 562 U. S. 115, 123–133. Pp. 5–9.

   (b) The State's further arguments are unconvincing. It points out
that the "look though" presumption may not accurately identify the
grounds for a higher court's decision. But the "look through" pre-
sumption is not an absolute rule. Additional evidence that might not
be sufficient to rebut the presumption in a case like *Ylst*, where the
lower court rested on a state-law procedural ground, would allow a
federal court to conclude that counsel has rebutted the presumption
in a case decided on the merits. For instance, a federal court may
conclude that the presumption is rebutted where counsel identifies
convincing alternative arguments for affirmance that were made to
the State's highest court, or equivalent evidence such as an alterna-
tive ground that is obvious in the state-court record. The State also
argues that this Court does not necessarily presume that a federal
court of appeals' silent opinion adopts the reasoning of the court be-
low, but that is a different context. Were there to be a "look through"
approach as a general matter in that context, judges and lawyers
might read those decisions as creating, through silence, binding cir-
cuit precedent. Here, a federal court "looks through" the silent deci-

Syllabus

sion for a specific and narrow purpose, to identify the grounds for the higher court's decision as the Antiterrorism and Effective Death Penalty Act requires. Nor does the "look through" approach show disrespect for the States; rather, it seeks to replicate the grounds for the higher state court's decision. Finally, the "look though" approach is unlikely to lead state courts to write full opinions where they would have preferred to decide summarily, at least not to any significant degree. Pp. 9–11.

834 F. 3d 1227, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, SOTOMAYOR, and KAGAN, JJ., joined. GORSUCH, J., filed a dissenting opinion, in which THOMAS and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–6855

_____

## MARION WILSON, PETITIONER *v.* ERIC SELLERS, WARDEN

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[April 17, 2018]

JUSTICE BREYER delivered the opinion of the Court.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter "adjudicated on the merits in State court" to show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U. S. C. §2254(d). Deciding whether a state court's decision "involved" an unreasonable application of federal law or "was based on" an unreasonable determination of fact requires the federal habeas court to "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims," *Hittson* v. *Chatman,* 576 U. S. ___, ___ (2015) (GINSBURG, J., concurring in denial of certiorari) (slip op., at 1), and to give appropriate deference to that decision, *Harrington* v. *Richter,* 562 U. S. 86, 101–102 (2011).

This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its

decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable. We have affirmed this approach time and again. See, *e.g.*, *Porter* v. *McCollum*, 558 U. S. 30, 39–44 (2009) (*per curiam*); *Rompilla* v. *Beard*, 545 U. S. 374, 388–392 (2005); *Wiggins* v. *Smith*, 539 U. S. 510, 523–538 (2003).

The issue before us, however, is more difficult. It concerns how a federal habeas court is to find the state court's reasons when the relevant state-court decision on the merits, say, a state supreme court decision, does not come accompanied with those reasons. For instance, the decision may consist of a one-word order, such as "affirmed" or "denied." What then is the federal habeas court to do? We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

I

In 1997 a Georgia jury convicted petitioner, Marion Wilson, of murder and related crimes. After a sentencing hearing, the jury sentenced Wilson to death. In 1999 the Georgia Supreme Court affirmed Wilson's conviction and sentence, *Wilson* v. *State*, 271 Ga. 811, 525 S. E. 2d 339 (1999), and this Court denied his petition for certiorari, *Wilson* v. *Georgia*, 531 U. S. 838 (2000).

Wilson then filed a petition for habeas corpus in a state court, the Superior Court for Butts County. Among other

things, he claimed that his counsel was "ineffective" during his sentencing, in violation of the Sixth Amendment. See *Strickland* v. *Washington*, 466 U. S. 668, 687 (1984) (setting forth "two components" of an ineffective-assistance-of-counsel claim: "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense"). Wilson identified new evidence that he argued trial counsel should have introduced at sentencing, namely, testimony from various witnesses about Wilson's childhood and the impairment of the frontal lobe of Wilson's brain.

After a hearing, the state habeas court denied the petition in relevant part because it thought Wilson's evidence did not show that counsel was "deficient," and, in any event, counsel's failure to find and present the new evidence that Wilson offered had not prejudiced Wilson. *Wilson* v. *Terry*, No. 2001–v–38 (Super. Ct. Butts Cty., Ga., Dec. 1, 2008), App. 60–61. In the court's view, that was because the new evidence was "inadmissible on evidentiary grounds," was "cumulative of other testimony," or "otherwise would not have, in reasonable probability, changed the outcome of the trial." *Id.*, at 61. Wilson applied to the Georgia Supreme Court for a certificate of probable cause to appeal the state habeas court's decision. But the Georgia Supreme Court denied the application without any explanatory opinion. *Wilson* v. *Terry*, No. 2001–v–38 (May 3, 2010), App. 87, cert. denied, 562 U. S. 1093 (2010).

Wilson subsequently filed a petition for habeas corpus in the United States District Court for the Middle District of Georgia. He made what was essentially the same "ineffective assistance" claim. After a hearing, the District Court denied Wilson's petition. *Wilson* v. *Humphrey*, No. 5:10–cv–489 (Dec. 19, 2013), App. 88–89. The court assumed that Wilson's counsel had indeed been "deficient" in failing adequately to investigate Wilson's background and physi-

cal condition for mitigation evidence and to present what
he likely would have found at the sentencing hearing. *Id.*,
at 144. But, the court nonetheless deferred to the state
habeas court's conclusion that these deficiencies did not
"prejudice" Wilson, primarily because the testimony of
many witnesses was "cumulative," and because the evi-
dence of physical impairments did not include any physi-
cal examination or other support that would have shown
the state-court determination was "unreasonable." *Id.*, at
187; see *Richter*, 562 U. S., at 111–112.

Wilson appealed to the Court of Appeals for the Elev-
enth Circuit. *Wilson* v. *Warden*, 774 F. 3d 671 (2014). The
panel first held that the District Court had used the wrong
method for determining the reasoning of the relevant state
court, namely, that of the Georgia Supreme Court (the
final and highest state court to decide the merits of Wil-
son's claims). *Id.*, at 678. That state-court decision, the
panel conceded, was made without an opinion. But, the
federal court was wrong to "look through" that decision
and assume that it rested on the grounds given in the
lower court's decision. Instead of "looking through" the
decision to the state habeas court's opinion, the federal
court should have asked what arguments "could have
supported" the Georgia Supreme Court's refusal to grant
permission to appeal. The panel proceeded to identify a
number of bases that it believed reasonably could have
supported the decision. *Id.*, at 678–681.

The Eleventh Circuit then granted Wilson rehearing en
banc so that it could consider the matter of methodology.
*Wilson* v. *Warden*, 834 F. 3d 1227 (2016). Ultimately six
judges (a majority) agreed with the panel and held that its
"could have supported" approach was correct. *Id.*, at 1235.
Five dissenting judges believed that the District Court
should have used the methodology it did use, namely, the
"look through" approach. *Id.*, at 1242–1247, 1247–1269.
Wilson then sought certiorari here. Because the Eleventh

Circuit's opinion creates a split among the Circuits, we granted the petition. Compare *id.*, at 1285 (applying "could have supported" approach), with *Grueninger* v. *Director, Va. Dept. of Corrections*, 813 F. 3d 517, 525–526 (CA4 2016) (applying "look through" presumption post-*Richter*), and *Cannedy* v. *Adams*, 706 F. 3d 1148, 1156–1159 (CA9 2013) (same); see also *Clements* v. *Clarke*, 592 F. 3d 45, 52 (CA1 2010) (applying "look through" presumption pre-*Richter*); *Bond* v. *Beard*, 539 F. 3d 256, 289–290 (CA3 2008) (same); *Mark* v. *Ault*, 498 F. 3d 775, 782–783 (CA8 2007) (same); *Joseph* v. *Coyle*, 469 F. 3d 441, 450 (CA6 2006) (same).

## II

We conclude that federal habeas law employs a "look through" presumption. That conclusion has parallels in this Court's precedent. In *Ylst* v. *Nunnemaker*, a defendant, convicted in a California state court of murder, appealed his conviction to the state appeals court where he raised a constitutional claim based on *Miranda* v. *Arizona*, 384 U. S. 436 (1966). 501 U. S. 797, 799–800 (1991). The appeals court rejected that claim, writing that "'an objection based upon a *Miranda* violation cannot be raised for the first time on appeal.'" *Id.*, at 799. The defendant then similarly challenged his conviction in the California Supreme Court and on collateral review in several state courts (including once again the California Supreme Court). In each of these latter instances the state court denied the defendant relief (or review). In each instance the court did so without an opinion or other explanation. *Id.*, at 799–800.

Subsequently, the defendant asked a federal habeas court to review his constitutional claim. *Id.*, at 800. The higher state courts had given no reason for their decision. And this Court ultimately had to decide how the federal court was to find the state court's reasoning in those cir-

cumstances. Should it have "looked through" the unreasoned decisions to the state procedural ground articulated in the appeals court or should it have used a different method?

In answering that question Justice Scalia wrote the following for the Court:

> "The problem we face arises, of course, because many formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion 'fairly appear[s] to rest primarily upon federal law,' we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."
> *Id.,* at 803 (citation omitted).

Since *Ylst*, every Circuit to have considered the matter has applied this presumption, often called the "look through" presumption, but for the Eleventh Circuit—even where the state courts did not apply a procedural bar to review. See *supra,* at 4–5. And most Federal Circuits applied it prior to *Ylst*. See *Ylst, supra,* at 803 (citing *Prihoda* v. *McCaughtry*, 910 F. 2d 1379, 1383 (CA7 1990); *Harmon* v. *Barton*, 894 F. 2d 1268, 1272 (CA11 1990); *Evans* v. *Thompson*, 881 F. 2d 117, 123, n. 2 (CA4 1989);

*Ellis* v. *Lynaugh*, 873 F. 2d 830, 838 (CA5 1989)).

That is not surprising in light of the fact that the "look through" presumption is often realistic, for state higher courts often (but certainly not always, see *Redmon* v. *Johnson*, 2018 WL 415714 (Ga., Jan. 16, 2018)) write "denied" or "affirmed" or "dismissed" when they have examined the lower court's reasoning and found nothing significant with which they disagree.

Moreover, a "look through" presumption is often (but not always) more efficiently applied than a contrary approach—an approach, for example, that would require a federal habeas court to imagine what might have been the state court's supportive reasoning. The latter task may prove particularly difficult where the issue involves state law, such as state procedural rules that may constrain the scope of a reviewing court's summary decision, a matter in which a federal judge often lacks comparative expertise. See *Ylst, supra,* at 805.

The State points to a later case, *Harrington* v. *Richter*, 562 U. S. 86 (2011), which, it says, controls here instead of *Ylst*. In its view, *Ylst* should apply, at most, to cases in which the federal habeas court is trying to determine whether a state-court decision without opinion rested on a state procedural ground (for example, a procedural default) or whether the state court has reached the merits of a federal issue. In support, it notes that *Richter* held that the state-court decisions to which AEDPA refers include summary dispositions, *i.e.*, decisions without opinion. *Richter* added that "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." 562 U. S., at 98.

*Richter* then said that, where "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reason-

able basis for the state court to deny relief." *Ibid.* And the
Court concluded that, when "a federal claim has been
presented to a state court and the state court has denied
relief, it may be presumed that the state court adjudicated
the claim on the merits in the absence of any indication or
state-law procedural principles to the contrary." *Id.,* at 99.

In our view, however, *Richter* does not control here. For
one thing, *Richter* did not directly concern the issue before
us—whether to "look through" the silent state higher court
opinion to the reasoned opinion of a lower court in order to
determine the reasons for the higher court's decision.
Indeed, it could not have considered that matter, for in
*Richter*, there was no lower court opinion to look to. That
is because the convicted defendant sought to raise his
federal constitutional claim for the first time in the Cali-
fornia Supreme Court (via a direct petition for habeas
corpus, as California law permits). *Id.*, at 96.

For another thing, *Richter* does not say the reasoning of
*Ylst* does not apply in the context of an unexplained deci-
sion on the merits. To the contrary, the Court noted that
it was setting forth a presumption, which "may be over-
come when there is reason to think some other explana-
tion for the state court's decision is more likely." *Richter*,
*supra,* at 99–100. And it referred in support to *Ylst*, 501
U. S., at 803.

Further, we have "looked through" to lower court deci-
sions in cases involving the merits. See, *e.g.*, *Premo* v.
*Moore*, 562 U. S. 115, 123–133 (2011); *Sears* v. *Upton*,
561 U. S. 945, 951–956 (2010) (*per curiam*). Indeed, we de-
cided one of those cases, *Premo*, on the same day we decided
*Richter*. And in our opinion in *Richter* we referred to
*Premo*. 562 U. S., at 91. Had we intended *Richter*'s "could
have supported" framework to apply even where there is a
reasoned decision by a lower state court, our opinion in
*Premo* would have looked very different. We did not even
cite the reviewing state court's summary affirmance.

Instead, we focused exclusively on the actual reasons given by the lower state court, and we deferred to those reasons under AEDPA. 562 U. S., at 132 ("The state postconviction court's decision involved no unreasonable application of Supreme Court precedent").

## III

The State's further arguments do not convince us. The State points out that there could be many cases in which a "look through" presumption does not accurately identify the grounds for the higher court's decision. And we agree. We also agree that it is more likely that a state supreme court's single word "affirm" rests upon alternative grounds where the lower state court decision is unreasonable than, *e.g.,* where the lower court rested on a state-law procedural ground, as in *Ylst*. But that is why we have set forth a presumption and not an absolute rule. And the unreasonableness of the lower court's decision itself provides some evidence that makes it less likely the state supreme court adopted the same reasoning. Thus, additional evidence that might not be sufficient to rebut the presumption in a case like *Ylst* would allow a federal court to conclude that counsel has rebutted the presumption in a case like this one. For instance, a federal habeas court may conclude that counsel has rebutted the presumption on the basis of convincing alternative arguments for affirmance made to the State's highest court or equivalent evidence presented in its briefing to the federal court similarly establishing that the State's highest court relied on a different ground than the lower state court, such as the existence of a valid ground for affirmance that is obvious from the state-court record. The dissent argues that the Georgia Supreme Court's recent decision in *Redmon* v. *Johnson* rebuts the presumption in Georgia because that court indicated its summary decisions should not be read to adopt the lower court's reasoning. *Post*, at 6–8, 10–11 (opinion of

GORSUCH, J.). This misses the point. A presumption that can be rebutted by evidence of, for instance, an alternative ground that was argued or that is clear in the record was the likely basis for the decision is in accord with full and proper respect for state courts, like those in Georgia, which have well-established systems and procedures in place in order to ensure proper consideration to the arguments and contention in the many cases they must process to determine whether relief should be granted when a criminal conviction or its ensuing sentence is challenged.

The State also points out that we do not necessarily presume that a silent opinion of a federal court of appeals adopts the reasoning of the court below. The dissent similarly invokes these "traditional rules of appellate practice." See *post*, at 5–6, 10. But neither the State nor the dissent provides examples of similar context. Were we to adopt a "look through" approach in respect to silent federal appeals court decisions as a general matter in other contexts, we would risk judges and lawyers reading those decisions as creating, through silence, a precedent that could be read as binding throughout the circuit—just what a silent decision may be thought not to do. Here, however, we "look through" the silent decision for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do. See *supra,* at 1–2. We see no reason why the federal court's interpretation of the state court's silence should be taken as binding precedent outside this context, for example, as a statewide binding interpretation of state law.

Further, the State argues that the "look through" approach shows disrespect for the States. See Brief for Respondent 39 ("Wilson's approach to summary decisions reflects an utter lack of faith in the ability of the highest state courts to adjudicate constitutional rights"). We do not believe this is so. Rather the presumption seeks to replicate the grounds for the higher state court's decision.

Where there are convincing grounds to believe the silent court had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary. In our view, this approach is more likely to respect what the state court actually did, and easier to apply in practice, than to ask the federal court to substitute for silence the federal court's thought as to more supportive reasoning.

Finally, the State argues that the "look through" approach will lead state courts to believe they must write full opinions where, given the workload, they would have preferred to have decided summarily. Though the matter is empirical, given the narrowness of the context, we do not believe that they will feel compelled to do so—at least not to any significant degree. The State offers no such evidence in the many Circuits that have applied *Ylst* outside the procedural context. See *supra,* at 5.

For these reasons, we reverse the Eleventh Circuit's judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–6855

_____

## MARION WILSON, PETITIONER *v.* ERIC SELLERS, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 17, 2018]

JUSTICE GORSUCH, with whom JUSTICE THOMAS and JUSTICE ALITO join, dissenting.

After a state supreme court issues a summary order sustaining a criminal conviction, should a federal habeas court reviewing that decision presume it rests only on the reasons found in a lower state court opinion?  The answer is no.  The statute governing federal habeas review permits no such "look through" presumption.  Nor do traditional principles of appellate review.  In fact, we demand the *opposite* presumption for our work—telling readers that we independently review each case and that our summary affirmances may be read only as signaling agreement with a lower court's judgment and not necessarily its reasons.  Because I can discern no good reason to treat the work of our state court colleagues with less respect than we demand for our own, I would reject petitioner's presumption and must respectfully dissent.

Even so, some good news can be found here.  While the Court agrees to adopt a "look through" presumption, it does so only after making major modifications to petitioner's proposal.  The Court tells us that the presumption should count for little in cases "where the lower state court decision is unreasonable" because it is not "likely" a state supreme court would adopt unreasonable reasoning. *Ante,* at 9.  In cases like that too, the Court explains,

federal courts remain free to sustain state court convictions whenever reasonable "ground[s] for affirmance [are] obvious from the state-court record" or appear in the parties' submissions in state court or the federal habeas proceeding. *Ibid.* Exactly right, and exactly what the law has always demanded. So while the Court takes us on a journey through novel presumptions and rebuttals, it happily returns us in the end very nearly to the place where we began and belonged all along.

\*

To see the problem with petitioner's presumption, start with the statute. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs federal review of state criminal convictions. It says a federal court may not grant habeas relief overturning a state court conviction "with respect to any claim that was adjudicated on the merits in State court proceedings" unless (among other things) the petitioner can show that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U. S. C. §2254(d)(1). As the text and our precedent make clear, a federal habeas court must focus its review on the final state court decision on the merits, not any preceding decision by an inferior state court. See *Greene* v. *Fisher*, 565 U. S. 34, 40 (2011). Nor does it matter whether the final state court decision comes with a full opinion or in a summary order: the same deference is due all final state court decisions. *Harrington* v. *Richter*, 562 U. S. 86, 98 (2011); *Cullen* v. *Pinholster*, 563 U. S. 170, 187 (2011).

The upshot of these directions is clear. Even when the final state court decision "is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing *there was no reasonable basis* for the state court to deny relief." *Richter*, 562 U. S., at 98 (emphasis added).

And before a federal court can disregard a final summary state court decision, it "must determine what arguments or theories . . . *could have supporte[d]* the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.,* at 102 (emphasis added). Far from suggesting federal courts should presume a state supreme court summary order rests on views expressed in a lower court's opinion, then, AEDPA and our precedents require more nearly the *opposite* presumption: federal courts must presume the order rests on any reasonable basis the law and facts allow.

If this standard seems hard for a habeas petitioner to overcome, "that is because it was meant to be." *Ibid.* In AEDPA, Congress rejected the notion that federal habeas review should be "a substitute for ordinary error correction." *Id.,* at 102–103. Instead, AEDPA "reflects the view that habeas corpus is a 'guard against *extreme malfunctions* in the state criminal justice systems.'" *Id.,* at 102 (emphasis added). "The reasons for this approach are familiar. 'Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.' It 'disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.'" *Id.,* at 103 (citations omitted).

Petitioner and the Court today labor to distinguish these authorities, but I don't see how they might succeed. They point to the fact that in *Richter* no state court had issued a reasoned order, while here a lower state court did. See Brief for Petitioner 28–30; *ante,* at 8. But on what account of AEDPA or *Richter* does that factual distinction make a legal difference? Both the statute and our

precedent explain that federal habeas review looks to the final state court decision, not any decision preceding it. Both instruct that to dislodge the final state court decision a petitioner must prove it involved an unreasonable application of federal law. And to carry that burden in the face of a final state court summary decision, *Richter* teaches that the petitioner must show no lawful basis could have reasonably supported it. To observe that some final state court summary decisions are preceded by lower court reasoned opinions bears no more relevance to the AEDPA analysis than to say that some final state court summary decisions are issued on Mondays.[1]

Unable to distinguish *Richter*, petitioner seeks to confine it by caricature. Because that case requires a federal court to "imagine" its own arguments for denying habeas relief and engage in "decision-making-by-hypothetical," he argues it should be limited to its facts. Brief for Petitioner 28–30, 33; Reply Brief 9. But the Court today does not adopt petitioner's characterization, and for good reason: *Richter* requires no such thing. In our adversarial system

———————————

[1] Petitioner and the Court separately suggest that *Premo* v. *Moore*, 562 U. S. 115 (2011), supports their position because the Court there did not follow *Richter*'s approach. See Brief for Petitioner 40; *ante,* at 8–9. But the following sentences from *Moore* (with emphasis added) are clear proof it did: "'[t]he question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard,'" 562 U. S., at 123 (quoting *Richter*); "[t]o overcome the limitation imposed by §2254(d), the Court of Appeals had to conclude that both findings [*i.e.,* no deficient performance and no prejudice] *would have* involved an unreasonable application of clearly established law," *ibid.* (citing *Richter*); "[t]he state court here *reasonably could have* determined that [no prejudice existed]," *id.,* at 129. *Moore* simply found that a reasonable basis—provided by a state postconviction court—could (and did) support the denial of habeas relief. *Id.,* at 123. It did not rely on an unreasonable basis provided by a lower court to grant habeas relief, as petitioner seeks to have us do. *Moore* thus accords with AEDPA and our precedents, while petitioner's presumption does not.

a federal court generally isn't *required* to imagine or hypothesize arguments that neither the parties before it nor any lower court has presented. To determine if a reasonable basis "could have supported" a summary denial of habeas relief under *Richter*, a federal court must look to the state lower court opinion (if there is one), any argument presented by the parties in the state proceedings, and any argument presented in the federal habeas proceeding. Of course, a federal court sometimes may consider on its own motion alternative bases for denying habeas relief apparent in the law and the record, but it does not generally bear an *obligation* to do so. See *Wood* v. *Milyard*, 566 U. S. 463, 471–473 (2012) (discussing *Day* v. *McDonough*, 547 U. S. 198 (2006), and *Granberry* v. *Greer*, 481 U. S. 129 (1987)).

Nor is that the end of the problems with petitioner's "look through" presumption. It also defies traditional rules of appellate practice that informed Congress's work when it adopted AEDPA and that should inform our work today. *McQuiggin* v. *Perkins*, 569 U. S. 383, 398, n. 3 (2013). Appellate courts usually have an independent duty to review the facts and law in the cases that come to them. Often they see errors in lower court opinions. But often, too, they may affirm on alternative bases either argued by the parties or (sometimes) apparent to them on the face of the record. See, *e.g., SEC* v. *Chenery Corp.*, 318 U. S. 80, 88 (1943) (noting "the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason'"); *Wood*, *supra,* at 473. And a busy appellate court sometimes may not see the profit in devoting its limited resources to explaining the error and the alternative basis for affirming when the outcome is sure to remain the same, so it issues a summary affirmance instead. To reflect these realities, this Court has traditionally warned readers *against* presuming

our summary affirmance orders rest on reasons articulated in lower court opinions. *Comptroller of Treasury of Md.* v. *Wynne*, 575 U. S. ___, ___–___ (2015) (slip op., at 16–17) ("'[A] summary affirmance is an affirmance of the judgment only,' and 'the rationale of the affirmance may not be gleaned solely from the opinion below'"); *Mandel* v. *Bradley*, 432 U. S. 173, 176 (1977) (*per curiam*). The courts of appeals have issued similar warnings for similar reasons about their own summary orders. See, *e.g., Rates Technology, Inc.* v. *Mediatrix Telecom, Inc.*, 688 F. 3d 742, 750 (CA Fed. 2012); *DeShong* v. *Seaboard Coast Line R. Co.*, 737 F. 2d 1520, 1523 (CA11 1984). And respect for this traditional principle of appellate practice surely weighs against presuming a state court's summary disposition rests solely on a lower court's opinion. On what account could we reasonably demand more respect for our summary decisions than we are willing to extend to those of our state court colleagues?

Petitioner and the Court offer only this tepid reply. They suggest that their "look through" presumption seeks to reflect "realistic[ally]" the basis on which the state summary decision rests. See Brief for Petitioner 44; *ante,* at 7. But to the extent this is a claim that their presumption comports realistically with longstanding traditions of appellate practice, it is wrong for the reasons just laid out. In fact, applying traditional understandings of appellate practice, this Court has refused to presume that state appellate courts even read lower court opinions rather than just the briefs before them. See *Baldwin* v. *Reese*, 541 U. S. 27, 31 (2004). And surely it is a mystery how the Court might today presume state supreme courts *rely* on that which it traditionally presumes they do not *read*.

If the argument here is instead an empirical claim that the "look through" presumption comports realistically with what happened in this case and others like it, it is wrong too. Petitioner was convicted in Georgia. And during the

pendency of this case in our Court, the Georgia Supreme Court issued an order confirming that lower courts in that State may not "presum[e] that when this Court summarily denies an application to appeal an order denying habeas corpus relief, we necessarily agree with everything said in that order." *Redmon* v. *Johnson*, 809 S. E. 2d 468, 472 (Ga. 2018). The court explained that it has long followed just this rule for all the reasons you'd expect. It independently reviews the facts and law in each habeas case. If it finds something it thinks might amount to a consequential error, the court sets the case for argument and usually prepares a full opinion. But "[o]n many occasions," the court finds only "inconsequential errors." *Id.,* at 471.[2] And in these cases the court normally issues a

_____

[2] In language that will sound familiar to all judges and lawyers involved in litigating habeas claims, the Georgia Supreme Court explained that "[t]here are many examples of inconsequential errors, but among the most common are the following:

- The habeas court rejects a claim both on a procedural ground and, alternatively, on the substantive merits. This Court determines that one of those rulings appears factually or legally erroneous, but the other is correct, so an appeal would result in the habeas court's judgment being affirmed on the correct ground.
- In addressing an ineffective assistance of counsel claim under *Strickland* v. *Washington*, 466 U. S. 668 (1984), the habeas court rules that counsel did not perform deficiently as alleged. That ruling appears to be erroneous, but this Court determines based on our review of the record that no prejudice resulted from the deficient performance, so an appeal would result in affirming the habeas court's judgment. See *id.,* at 697; *Rozier* v. *Caldwell*, 300 Ga. 30, 31–32 (2016).
- In addressing other claims that require the petitioner to prove each element of a multi-part test, such as a claim under *Brady* v. *Maryland*, 373 U. S. 83 (1963), the habeas court makes factual or legal errors regarding the petitioner's proof of one element but correctly concludes (or the record clearly shows) that the petitioner has not proved another required element. An appeal would result in this Court's affirming the habeas court's judgment.

summary affirmance because the costs associated with full
treatment of the appeal outweigh the benefits of correcting
what is at most harmless error, especially given the court's
heavy caseload and the need to attend to more consequen-
tial matters.[3] Petitioner's presumption thus does not seek
to reflect reality; it seeks to deny it.

The presumption is especially unrealistic in another
way. The Court and petitioner presume that a summary
order by a state supreme court adopts *all the specific
reasons* expressed by a lower state court. In doing so, they
disregard a far more realistic possibility: that the state
supreme court might have relied only on the same *grounds*
for the denial of relief as did the lower court without nec-
essarily adopting all its reasoning. Here, the lower state
court denied petitioner's *Strickland* claim on the grounds
that counsel's performance was not deficient and peti-
tioner suffered no prejudice. And it gave several reasons for

——————

- The habeas court misstates a legal standard in one part of its or-
der, but recites the standard correctly elsewhere in the order, and
it is clear that the judgment is correct applying the right standard.

- In addressing a habeas petition with multitudinous claims, the
habeas court's order fails to explicitly rule on a claim, but the rec-
ord shows that the claim is entirely meritless." *Redmon*, 809
S. E. 2d, at 471 (some citations omitted).

[3] "[T]he burdens of invoking the full appellate process, including writ-
ing opinions simply to point out factual or legal errors that do not affect
the judgment, are significant for this Court. We issue about 350
published opinions each year, all en banc, meaning that each Justice
(seven of us until 2017, nine now) must evaluate an opinion a day and
author 35 to 50 majority opinions a year, with the help of only two law
clerks in each chambers. Moreover, the Georgia Constitution requires
this Court to issue its decision within the two terms of court after an
appeal is docketed (which means within about eight months, given our
three terms per year). . . . And our reasoned decisions are precedent
binding on all other Georgia courts, . . . so issuing opinions where the
relevant law is already well-established runs the risk of creating
inconsistencies." *Redmon*, 809 S. E. 2d, at 472.

its conclusions: for example, the evidence petitioner sought to admit "would have been inadmissible on evidentiary grounds, cumulative of other testimony, or otherwise would not have, in reasonable probability, changed the outcome of the trial." App. 61. In summarily denying relief, the state supreme court might have reached the same conclusions (no deficient performance and no prejudice) without resting on the exact same reasons.

While the "look through" presumption cannot be squared with AEDPA's text, traditional rules, or Georgia's actual practice, petitioner and the Court contend it is at least consistent with *Ylst* v. *Nunnemaker*, 501 U. S. 797 (1991). See Brief for Petitioner 38; *ante,* at 5–8. But it is not. In habeas review of state court convictions, federal courts may only review questions of federal law. So if a state court decision rejecting a petitioner's federal law claim rests on a state procedural defect (say the petitioner filed too late under state rules), federal courts generally have no authority to reach the federal claim. *Ylst* simply teaches that, if a lower state court opinion expressly relied on an independent and adequate state ground, we should presume a later state appellate court summary disposition invoked it too. See 501 U. S., at 801, 803. The decision thus seeks to protect state court decisions from displacement and reaches a result consistent with the traditional rule that a summary order invokes *all* fairly presented bases for affirmance.

Neither can *Ylst* be reimagined today as meaning anything more. The case came years before AEDPA's new standards for habeas review and can offer nothing useful about them. The work of interpreting AEDPA's demands was left instead to *Richter*. And, as we've seen, *Richter* forecloses petitioner's presumption. Of course, and as petitioner stresses, *Richter* didn't overrule *Ylst*. But that's for the simple reason that *Ylst* continues to do important, if limited, work in the disposition of procedural default

claims because "AEDPA did not change the application of pre-AEDPA procedural default principles." B. Means, Federal Habeas Manual §9B:3 (2017).

Uncomfortable questions follow too from any effort to reimagine *Ylst*. If we were to take *Ylst* as suggesting that summary decisions presumptively rely only on the reasons found in lower court opinions, wouldn't we have to over-rule our many precedents like *Wynne* and *Mandel* that explicitly reject any such presumption? Wouldn't circuit courts have to discard their own similar precedents? See *supra*, at 5–6. Consistency would seem to demand no less.

The only answer petitioner and the Court offer is no answer at all. Consistency, they suggest, is overrated. *Everywhere else* in the law we should retain the usual rule that a summary affirmance can't be read as presumptively resting on the lower court's reasons. They encourage us to use *Ylst* only as a tool for making a *special exception* for AEDPA cases: here and here alone should we adopt peti-tioner's "look through" presumption. Brief for Petitioner 18, 20; *ante,* at 10 (stating that "we 'look through' the silent decision for a specific and narrow purpose" under AEDPA). But just stating this good-for-habeas-only rule should be enough to reject it. Summary orders that hap-pen to arise in state habeas cases should receive no less respect than those that arise anywhere else in the law. If anything, they should receive *more* respect, because federal habeas review of state court decisions "'intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.'" *Richter,* 562 U. S., at 103.

\*

Petitioner's novel presumption not only lacks any prov-enance in the law, it promises nothing for its trouble. Consider the most obvious question it invites, one sug-gested by the facts of our own case: what happens when a state supreme court issues an order explaining that its

summary affirmances do not necessarily adopt the reasons in lower court opinions? Should that be enough to rebut the "look through" presumption? After defending the presumption, even the dissent in the Eleventh Circuit decision under review recognized that a disclaimer along these lines should suffice to rebut it. See *Wilson* v. *Warden*, 834 F. 3d 1227, 1263 (2016) (en banc) (opinion of J. Pryor, J.) ("The Georgia Supreme Court could simply issue a one-line order denying an application for a certificate of probable cause that indicates agreement with the result the superior court reached but not the lower court's reasons for rejecting the petitioner's claim"). And, of course, the Georgia Supreme Court has recently responded to the dissent's invitation by issuing just such a disclaimer. So in the end petitioner's presumption seems likely to accomplish nothing for him and only needless work for others—inducing more state supreme courts to churn out more orders restating the obvious fact that their summary dispositions don't necessarily rest on the reasons given by lower courts. Along the way, too, it seems federal courts will have their hands full. For while the Eleventh Circuit dissent had no difficulty acknowledging that an order like Georgia's suffices to overcome petitioner's presumption, the Court today refuses to supply the same obvious answer.

Consider, too, the questions that would follow in the unlikely event a general order like the one from the Georgia Supreme Court wasn't considered enough to overcome petitioner's presumption. Quickly federal courts would be forced to decide: does the "look through" presumption survive even when a state supreme court includes language in *every* summary order explaining that its decision does not necessarily adopt the reasoning below? What if the state supreme court says something slightly different but to the same effect, declaring in each case that it has independently considered the relevant law and evidence

before denying relief?  And if we start dictating what state court disclaimers should look like and where they should appear, what exactly is left of Congress's direction that our review is intended to guard only against "'extreme malfunctions'" in state criminal justice systems?  *Richter*, *supra*, at 102.  Wouldn't we be slipping into the business of "tell[ing] state courts how they must write their opinions," something this Court has long said federal habeas courts "have no power" to do?  *Coleman* v. *Thompson*, 501 U. S. 722, 739 (1991).

Apart from whether a (general or case-specific) order from a state supreme court suffices to overcome petitioner's presumption, there's the question what else might. Say a lower state court opinion includes an error but the legal briefs or other submissions presented to the state supreme court supply sound alternative bases for affirmance.  In those circumstances, should a federal habeas court really presume that the state supreme court chose to repeat the lower court's mistake rather than rely on the solid grounds argued to it by the parties?  What if a sound alternative basis for affirmance is presented for the first time in the parties' federal habeas submissions: are we to presume that the state supreme court was somehow less able to identify a reasonable basis for affirmance than federal habeas counsel?

Here at least the Court does offer an answer.  Petitioner insists that federal courts should presume that state supreme court summary orders rest on *unreasonable* lower state court opinions even in the face of *reasonable* alternative arguments presented to the state supreme court or in federal habeas proceedings.  But seeming to recognize the unreasonableness of this request, the Court opts to re-shape radically petitioner's proposed presumption before adopting it.  First, the Court states that "it is more likely that a state supreme court's single word 'affirm' rests upon alternative grounds where the lower state court decision is

unreasonable." *Ante,* at 9.  Then, the Court proceeds to explain that "a federal habeas court may conclude that counsel has rebutted the presumption on the basis of convincing alternative arguments for affirmance made to the State's highest court or equivalent evidence presented in its briefing to the federal court similarly establishing that the State's highest court relied on a different ground than the lower state court, such as the existence of a valid ground for affirmance that is obvious from the state-court record." *Ibid.*

The Court's reshaping of petitioner's presumption reveals just how futile this whole business really is.  If, as the Court holds, the "look through" presumption can be rebutted "where the lower state court decision is unreasonable," *ibid.*, it's hard to see what good it does.  Petitioner sought to assign *unreasonable* lower court opinions to final state court summary decisions.  To hear now that essentially only *reasonable* (and so sustainable) lower state court opinions are presumptively adopted by final state court summary decisions will surely leave him sour on this journey and federal habeas courts scratching their heads about the point of it all.  And if, as the Court also tells us, a federal habeas court can always deny relief on a basis that is apparent from the record or on the basis of alternative arguments presented by the parties in state or federal proceedings, then the "look through" presumption truly means nothing and we are back where we started.  With the Court's revisions to petitioner's presumption, a federal habeas court is neither obliged to *look through* exclusively to the reasons given by a lower state court, nor required to *presume* that a summary order adopts those reasons.

All this is welcome news of a sort.  The Court may promise us a future of foraging through presumptions and rebuttals.  But at least at the end of it we rest knowing that what was true before remains true today: a federal

habeas court should look at all the arguments presented in state and federal court and examine the state court record. And a federal habeas court should sustain a state court summary decision denying relief if those materials reveal a basis to do so reasonably consistent with this Court's holdings. Exactly what a federal court applying the statute and *Richter* has had to do all along. See *supra,* at 2–5. And exactly what the Eleventh Circuit correctly held it had to do in this case.

\*

Today, petitioner invites us to adopt a novel presumption that AEDPA, traditional principles of appellate review, and Georgia practice all preclude. It's an invitation that requires us to treat the work of state court colleagues with disrespect we would not tolerate for our own. And all to what end? None at all, it turns out. As modified by the Court, petitioner's presumption nearly drops us back where we began, with only trouble to show for the effort. Respectfully, I would decline the invitation to this circuitous journey and just affirm.