In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2002

PATRICK J. GAGE,

*Petitioner-Appellant,*

*v.*

REED A. RICHARDSON,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 16-cv-849 — **James D. Peterson**, *Chief Judge.*

ARGUED SEPTEMBER 18, 2020 — DECIDED OCTOBER 21, 2020

Before SYKES, *Chief Judge*, and HAMILTON and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge*. A Wisconsin jury found Patrick Gage guilty of repeatedly sexually assaulting his daughter, H.R.G., when she was a child. In state postconviction proceedings, Gage asserted that his trial counsel was ineffective for failing to interview and present testimony from his son and mother, Josh and Nancy Gage. The state appellate court concluded that Gage was not prejudiced by his trial counsel's failure to

call these witnesses because their testimony in postconviction proceedings was consistent with H.R.G.'s trial testimony. The state court's decision was not an unreasonable application of clearly established federal law, so we affirm the district court's denial of habeas relief.

## I. Background

### A. Charges and Trial

The state charged Gage with four counts of sexual assault of H.R.G.[1] These assaults occurred in various locations over several years, including: (1) at Nancy's house—where Gage was living at the time—when H.R.G. was between nine and twelve years old (counts one and two); (2) in a cabin behind Nancy's house when she was twelve (count three); and (3) at Gage's residence when she was younger than sixteen (count four).

At trial, H.R.G. testified that she and her older brother, Josh, primarily lived with their mother after their parents divorced. They would visit Gage one day per week, every other weekend, and sometimes for the entire summer. H.R.G. testified that her father sexually assaulted her almost every time she visited, though not every time. She described two specific assaults that occurred in the basement of Nancy's house where she, Josh, and Gage slept. The first incident happened when she was nine or ten. She and Gage were sleeping in the basement bedroom, and Josh was in the living room. When everyone was asleep, Gage touched her over her clothes and

---

[1] The state also charged Gage with two additional counts that alleged that he repeatedly sexually assaulted a former girlfriend's daughter. The jury found Gage not guilty of those counts.

tried to put his penis in her mouth. The second assault occurred when she and Gage were sleeping on the pullout couch in the basement living room and Josh was in the bedroom.

When H.R.G. was 12, she and Josh stayed with Gage for the summer in a cabin on Nancy's property. The cabin had a bedroom, where Josh slept, and a loft above that bedroom, where H.R.G. slept. H.R.G. testified that Gage climbed the ladder to the loft and assaulted her. Later, Gage moved to a new residence. At one point, when H.R.G. was asleep on the couch and Josh was asleep in the bedroom, Gage came home and began to sexually assault H.R.G. over her clothes. She kicked him, he stopped, and that was the last time he assaulted her.

On cross-examination, H.R.G. testified that based on the layout of Nancy's house, Nancy or Josh could have observed the sexual assaults if they had entered the room. Nancy could go up and down stairs without a problem. H.R.G. acknowledged that she was offered the upstairs bedroom to sleep in but declined. She also stated that sound traveled in the cabin. In Gage's residence, if Josh had walked out of the bedroom, he would have been able to see the couch. H.R.G. further testified that she had not told the details of the first assault to law enforcement or social workers because she had previously blocked out the incident.

Gage's counsel did not call Josh or Nancy to testify at trial. Gage was the only defense witness. The jury found Gage not guilty of the first count, and guilty of the second, third, and fourth counts. The state court sentenced him to 33 years of imprisonment followed by 21 years of extended supervision.

**B. Postconviction Proceedings**

Gage filed a motion for postconviction relief in the state trial court, contending that his trial counsel was ineffective for failing to interview Josh and Nancy before trial and present their testimony.[2] The court held an evidentiary hearing, at which Josh, Nancy, and Gage's trial counsel testified.

Josh testified that when he and H.R.G. stayed at Nancy's house, he would usually sleep on the pullout couch or in the bedroom. Gage would typically sleep in a recliner or in the bedroom, and H.R.G. would usually sleep on the couch. Josh did not remember H.R.G. sleeping in the bedroom, but stated it was possible that she slept there a few times. Gage usually fell asleep first, followed by H.R.G., and Josh would stay up the latest—usually falling asleep between one and three in the morning. Josh also testified that sound traveled in the cabin, and the ladder leading to the loft was creaky. He never saw Gage touch his sister in a sexual way.

Nancy testified that she believed H.R.G. and Gage had a normal father-daughter relationship, and she did not witness any changes in their relationship. She had a sewing room in the basement, which she accessed by walking through the basement living room. She sometimes used her sewing machine in the evenings, as late as 11 at night. She had offered H.R.G. the upstairs bedroom at her house, but H.R.G. had declined because she wanted to stay by Josh.

---

[2] Gage also attacked several other aspects of his trial and sentencing, but those issues are not relevant to this appeal and so we will not discuss them further.

Gage's trial counsel testified that he did not interview Josh or Nancy. He ultimately did not think that their testimony would bolster Gage's defense.

The trial court determined that defense counsel's performance was not deficient, and so Gage could not satisfy the demanding standard of *Strickland v. Washington*, 466 U.S. 668 (1984). The Wisconsin Court of Appeals affirmed the denial of Gage's postconviction motion. *State v. Gage*, 365 Wis. 2d 606 (Wis. Ct. App. 2015) (per curiam). It noted that a "claim of ineffective assistance of counsel has two parts: (1) deficient performance by counsel and (2) prejudice resulting from that deficient performance." *Id.* ¶ 10. To prove prejudice, the defendant must show "that the attorney's errors rendered the resulting conviction unreliable in light of the other evidence presented." *Id.*

Without reaching the performance prong, the Wisconsin Court of Appeals concluded that Gage had not shown that his trial counsel's failure to call Josh or Nancy as witnesses prejudiced him. The court noted that Josh's and Nancy's testimony was consistent with H.R.G.'s "about the layout of the basement and general sleeping arrangements." *Id.* ¶ 11. For example, Josh's "testimony that he 'usually' slept on the couch and sometimes slept in the bedroom [did] not contradict the victim's testimony that each of the siblings sometimes slept in the bedroom and sometimes slept on the sectional couch with the pullout bed in the living room area." *Id.* Similarly, Josh's testimony the he "was *generally* the last person to go to bed and that he never witnessed any sexual conduct" between Gage and H.R.G. "does not undermine the victim's account that the incidents would occur after everyone had gone to sleep." *Id.* As for Nancy, her testimony "that she did

not generally go into the basement at night was consistent with the victim's testimony" and did not show that she "would have been in position to witness any of the alleged incidents." *Id.* Ultimately, the court concluded that it did "not view the additional testimony that the victim's brother or Gage's mother could have provided as undermining the victim's account in any significant way." *Id.* ¶ 13. Gage appealed, and the Wisconsin Supreme Court denied his petition for review.

Proceeding *pro se*, Gage then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Western District of Wisconsin, contending that his trial counsel was ineffective for failing to call Josh and Nancy as witnesses. To succeed on this claim, under *Strickland*, Gage needed to show both that his counsel's performance was deficient and that he was prejudiced as a result. 466 U.S. at 687. The district court agreed with Gage that his trial counsel performed deficiently by failing to interview Josh and Nancy. *Gage v. Richardson* ("*Gage II*"), No. 16-cv-849, 2019 WL 1900338, at *7–8 (W.D. Wis. Apr. 29, 2019).

The district court, however, denied habeas relief on the prejudice prong. Applying the deferential standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it determined that the state appellate court did not apply *Strickland* "unreasonably in concluding that Gage had not shown prejudice." *Id.* at *8. It noted that "the court of appeals failed to discuss some noteworthy statements in Josh's and Nancy's proffered testimony," such as the fact that "they never witnessed any sexual touching or unusual behavior between Gage and H.R.G." *Id.* Nonetheless, the district court determined that "the remainder of the state court's

analysis is sufficient to assure [the district court] that the court's prejudice analysis is not 'unreasonable' and is at least a 'plausible outcome.'" *Id.* (quoting *Carter v. Duncan*, 819 F.3d 931, 948 (7th Cir. 2016)). Specifically, the state appellate court's conclusion that Josh's and Nancy's testimony was generally consistent with H.R.G.'s testimony and did not undermine her account was reasonable because they "confirmed H.R.G.'s description of the various residences and of the general sleeping arrangements." *Id.* Further, H.R.G. had already admitted to many aspects of their testimony during cross-examination, like the fact that "Josh could have heard the assaults or walked in the room at any time during the assaults" and "she had declined her grandmother's offer of a bedroom upstairs because she wanted to be near Josh." *Id.* at *8. Given that "the most significant import of Josh's and Nancy's testimony—that neither witness saw or heard anything that would have indicated to them that Gage was sexually assaulting H.R.G.—had minimal evidentiary value in light of the state's theory that Gage was calculating, manipulative, and assaulted H.R.G. only after Josh and Nancy were asleep in separate rooms," the district court concluded that "it was reasonable for the court of appeals to conclude that the likelihood of a different result was not substantial." *Id.* at *9.

## II. Discussion

On appeal, Gage maintains that he received ineffective assistance of counsel. Under *Strickland*, he must show both that his counsel's performance was deficient and that he was prejudiced as a result. 466 U.S. at 687. Typically, "[i]n considering habeas corpus petitions challenging state court convictions, our review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc)

(internal quotation marks and citation omitted). Gage contends that we do not owe AEDPA deference here. Even if it applies, Gage argues the state appellate court unreasonably applied *Strickland*'s prejudice prong, entitling him to habeas relief.

As explained below, Gage's arguments fail. AEDPA deference applies, and the Wisconsin Court of Appeals did not unreasonably apply *Strickland*'s prejudice prong to the facts of this case. Given that Gage is only entitled to habeas relief if he satisfies both of *Strickland*'s prongs, we decline to analyze whether his trial counsel's performance was deficient and instead focus solely on the prejudice prong. *Morales v. Johnson*, 659 F.3d 588, 600 (7th Cir. 2011) ("We need not address both prongs of the *Strickland* analysis.").

## A. Deference Under AEDPA

Generally, habeas claims arising from state courts are governed by AEDPA, under which "a federal court may grant habeas relief after a state-court adjudication on the merits only when that decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Schmidt v. Foster*, 911 F.3d 469, 476–77 (7th Cir. 2018) (en banc) (quoting 28 U.S.C. §§ 2254(d)(1), (2)).

Gage argues that we should not apply AEDPA deference for two reasons: first, because the state appellate court misstated and misapplied *Strickland*'s prejudice standard, and second, because it based its decision on an unreasonable determination of the facts.

As an initial matter, the state contends that Gage forfeited these challenges because he did not raise these issues before the district court. "A party generally forfeits issues and arguments raised for the first time on appeal." *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019). While "we have discretion to decide issues of law not argued in the district court … that discretion should be used sparingly." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 714 (7th Cir. 2015). Gage contends that we should exercise this discretion because he was *pro se*, the issues are fully briefed, and it is in the interests of justice. Nonetheless, even if we considered the merits of Gage's challenges to AEDPA deference, they fail.

First, Gage takes issue with the Wisconsin Court of Appeals' formulation of *Strickland*'s prejudice standard. Under *Strickland*, the prejudice prong requires the petitioner to "affirmatively prove prejudice," such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Wisconsin Court of Appeals stated that to prove prejudice, a defendant must "show that the attorney's errors rendered the resulting conviction *unreliable in light of the other evidence presented.*" *Gage I*, 365 Wis. 2d at ¶ 10 (emphasis added). The parties agree that this misstates *Strickland* but disagree about whether the state appellate court's analysis nonetheless reflects a correct application of the prejudice standard.

When a state court misstates *Strickland*'s prejudice prong, AEDPA deference may still apply if its analysis "focused on whether the proffered testimony could have affected the outcome, which is the correct inquiry under *Strickland*." *Carter*,

819 F.3d at 944; *Sussman v. Jenkins*, 636 F.3d 329, 360 (7th Cir. 2011). This is true even when the incorrect recitation seemingly places an additional burden on the petitioner. *Carter*, 819 F.3d at 944. In *Carter*, for example, the state court incorrectly recited the prejudice standard as requiring the defendant to show the result of the proceeding was unreliable or fundamentally unfair. *Id.* We nonetheless applied AEDPA deference to the state court's determination that prejudice was lacking because "its analysis focused on the probable impact of the proffered testimony on the outcome." *Id.* at 945; *see also Floyd v. Hanks*, 364 F.3d 847, 852–53 (7th Cir. 2004) (state court's recitation that "when errors do not make the result of the trial unreliable, they do not cause prejudice" did not render the decision of the state court contrary to *Strickland* where the "actual analysis of Floyd's counsel's conduct properly considered whether the counsel's actions affected the outcome of the trial").

Here, the state court's analysis focused on the consistency between Josh's and Nancy's testimony at the postconviction hearing and H.R.G.'s testimony at trial, which can reasonably be interpreted as "whether the proffered testimony could have affected the outcome," or its likely impact on the verdict. *See Carter*, 819 F.3d at 944. The state court noted that Josh's and Nancy's testimony did not undermine H.R.G.'s testimony in any significant way. Thus, despite the incorrect recitation of the prejudice standard, the state court's decision is not "contrary to" *Strickland.*

Second, Gage contends that the Wisconsin Court of Appeals based its decision on an unreasonable determination of the facts. *See* § 2254(d)(2). A state court's decision involves an unreasonable determination of the facts if it "rests upon fact-

finding that ignores the clear and convincing weight of the evidence." *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015) (quoting *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015)). In particular, Gage criticizes how the state appellate court characterized Josh's testimony about the sleeping arrangements in the basement when it stated that "the brother's testimony that he 'usually' slept on the couch and sometimes slept in the bedroom does not contradict the victim's testimony that each of the siblings sometimes slept in the bedroom and sometimes slept on the sectional couch with the pullout bed in the living room area." *Gage I*, 365 Wis. 2d at ¶ 11. Gage claims this summary misstates Josh's testimony because he testified that H.R.G. usually slept on the couch—and while it was possible she slept in the bedroom a few times, he did not specifically remember her doing so.

While the state court's finding that Josh and H.R.G. both testified that they "usually slept on the couch and sometimes in the bedroom" may not have been correct, it was not an unreasonable interpretation of the testimony. *See Collins v. Gaetz*, 612 F.3d 574, 586 (7th Cir. 2010) (under the "unreasonable determination of the facts" standard, "a state court's factual finding is never unreasonable 'merely because the federal habeas court would have reached a different conclusion in the first instance'"). Gage disagrees with the state court's characterization of how consistent Josh's testimony about the sleeping arrangements was with H.R.G.'s. But the state court's description of the testimony was not unreasonable because both Josh and H.R.G. testified that they slept either on the bed or on the couch, and Josh acknowledged it was possible that H.R.G. slept in the bedroom a few times. Thus, the state court's determination that Josh's testimony did not contradict

H.R.G.'s does not ignore the clear and convincing weight of the evidence.

Because Gage's challenges fail, we analyze the state appellate court's decision under the deferential standard set forth in AEDPA.

**B.** *Strickland***'s Prejudice Standard**

"The standard for legal errors under § 2254(d)(1) was meant to be difficult to satisfy." *Dassey*, 877 F.3d at 302. The issue is not whether we "agree with the state court decision or even whether the state court decision was correct," it is "whether the decision was unreasonably wrong under an objective standard." *Id.* When the state court "'explains its decision on the merits in a reasoned opinion,' this presents a 'straightforward inquiry' for the federal habeas court." *Lentz v. Kennedy*, 967 F.3d 675, 688 (7th Cir. 2020) (quoting *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)). Here, the Wisconsin Court of Appeals was the last reasoned decision on the merits, and "thus we focus on that decision and 'simply review[] the specific reasons given by the state court and defer[] to those reasons if they are reasonable." *Id.* (quoting *Wilson*, 138 S. Ct. at 1192). Habeas relief is only warranted if the petitioner shows that the state court's determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Given this narrow and exacting standard of review, we conclude that the Wisconsin Court of Appeals did not unreasonably apply *Strickland*'s prejudice prong.

The state appellate court determined that Gage had not shown prejudice from his trial counsel's failure to call Josh

and Nancy as witnesses because their testimony was largely consistent with H.R.G.'s—meaning it did not significantly undermine her account of the sexual assaults. Thus, there was not a reasonable probability of a different outcome had they testified. As the district court noted, the state appellate court's analysis of the issue was brief and failed to discuss some of Josh's and Nancy's statements in their proffered testimony. Their testimony that "they never witnessed any sexual touching or unusual behavior between Gage and H.R.G.," for example, "would have made H.R.G.'s testimony at trial that Gage sexually assaulted her 'almost every time [she] visited' at least somewhat doubtful," given Josh's proximity to her in all three locations. *Gage II*, 2019 WL 1900338, at *8.

Nonetheless, the state appellate court "provided a terse but sufficient explanation" for why Josh's and Nancy's testimony did not significantly undermine H.R.G.'s. *See Dassey*, 877 F.3d at 312–14 (noting that the "relative brevity" of the state appellate court opinion was "not a reason for granting habeas relief"). Much of their testimony corroborated H.R.G.'s version of events: nearly all the points Nancy and Josh conveyed in the postconviction hearing came out during H.R.G.'s cross-examination. H.R.G., for example, testified that Josh was always nearby when the assaults occurred, Nancy could easily access the basement sewing room, she had declined Nancy's offer to sleep in the upstairs bedroom, and sound traveled in the cabin. And while Josh and Nancy testified that they did not witness any of the assaults, this fact alone does not suggest a reasonable probability that the jury would have disbelieved H.R.G. given that she testified the assaults occurred after everyone went to sleep. Thus, Josh's and Nancy's testimony not only failed to undermine much of H.R.G.'s testimony, it—in many cases—corroborated it.

Further, while Josh's testimony that he could not remember H.R.G. sleeping in the basement bedroom potentially undermined her account of the first assault—which she testified happened when she was sleeping in the bedroom—Gage was ultimately acquitted of that charge.

There is of course a chance the additional testimony could have changed the jury's mind. Given this case rested on the jury's determination of the credibility of the witnesses, fair-minded jurists may well disagree over the extent to which Josh's and Nancy's testimony was consistent with H.R.G.'s. But without any directly contradictory testimony, it was reasonable for the Wisconsin appellate court to conclude there was not a reasonable probability of a different outcome had they testified.

### III. Conclusion

The Wisconsin Court of Appeals did not unreasonably apply *Strickland* when it concluded there was not a reasonable probability of a different outcome had Josh and Nancy testified, so the district court's denial of habeas relief is

AFFIRMED.