[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14302
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-01258-PGB-TBS

JORGE NIEVES, JR.,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 12, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Jorge Nieves, Jr., a Florida prisoner proceeding *pro se*, appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition. We granted a certificate of appealability ("COA") on the issue of whether Nieves's "trial counsel was ineffective for failing to set an evidentiary hearing on Mr. Nieves's stand-your-ground motion." After careful review, we affirm the district court's denial of Nieves's § 2254 petition.

## I.     Background

In 2012, Florida law enforcement responded to Nieves's apartment and found Karla Pagan, Nieves's girlfriend and the mother of his child, stabbed to death. Nieves was found unconscious a few feet away with a laceration across his neck and a knife lying next to his body. Nieves was ultimately arrested and charged with the second-degree murder of Pagan, in violation of Florida Statute §§ 782.04(2), 775.087(1)(A). Thereafter, Nieves, through retained counsel, filed a "motion for declaration of immunity and dismissal," pursuant to Florida's "stand-your-ground law," Florida Statute §§ 776.012, 776.032(1) (2012).[1] Nieves alleged that he was immune from prosecution because (1) Pagan physically attacked and

---

[1] At the time of Nieves's trial, Florida law provided that "a person is justified in the use of deadly force and does not have a duty to retreat if . . . [h]e or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." Fla. Stat. § 776.012 (2012). Section 776.032 further provided that "[a] person who uses force as permitted in s. 776.012 . . . is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer . . . ." *Id.* § 776.032(1) (2012).

injured him in his home; (2) he "used defensive force to repel [her] physical aggression against him"; and (3) he "reasonably believed that such deadly force was necessary to prevent imminent death or further great bodily harm to himself."

Several months later, Nieves's retained counsel moved to withdraw from representation, citing "irreconcilable differences" and Nieves's failure to fulfill the agreed-upon contractual obligations. The trial court granted counsel's motion following a hearing and appointed new counsel. Thereafter, a few days prior to trial, two new attorneys from the Public Defender's Officer were substituted for Nieves's appointed counsel. It is undisputed that none of the attorneys requested an evidentiary hearing on the previously filed stand-your-ground motion, and the trial court never ruled on the motion. Following a trial, the jury convicted Nieves as charged, and he was sentenced to 40 years' imprisonment. Nieves appealed his conviction, and the Florida Fifth District Court of Appeal ("DCA") summarily affirmed. *Nieves v. State*, 162 So. 3d 1037 (Fla. 5th DCA 2014) (unpublished table decision).

Subsequently, Nieves filed a *pro se* motion for postconviction relief, pursuant to Florida Rule of Criminal Procedure 3.850, arguing in relevant part that his trial counsel rendered ineffective assistance by failing to file a stand-your-ground motion based on the "undisputed evidence of defense wounds justifying a use of force." Nieves requested an evidentiary hearing on this claim,

3

noting that "the determination [of] whether defense counsel['s] action(s) were tactical is a conclusion best made by the trial judge following [an] evidentiary hearing."

Because a stand-your-ground motion had been filed, the state postconviction court reframed the issue as alleging ineffective assistance for failure to set a hearing on the motion. The state court then denied the claim on the merits without an evidentiary hearing, noting that this was "not a case" of "undisputed evidence of self-defense" because Nieves did not testify at trial and there were no other eyewitnesses, and Nieves lacked any recollection of the incident when interviewed by police. The state court noted that the only evidence Nieves cited in support of his claim was that he had a defensive wound on his hand and a neighbor's testimony that he heard a male voice say "stop!" during what sounded like a "heated argument." However, based on testimony at trial, there was some question about whether the wound on Nieves's hand was in fact defensive, and the neighbor testified she was "not sure whether [s]he actually heard the male saying to stop." Further, "[a]s the State pointed out during cross-examination [of the neighbor], in the context of a domestic argument, there are other reasons that a person would say to stop beyond physical self-defense." Thus, given the limited and ambiguous evidence concerning self-defense, the state post-conviction court concluded that, even if counsel had set a hearing on the stand-your-ground motion, there was "no

4

possibility" that Nieves could have met his burden of proving that the use of force was justified. Nieves appealed, arguing that he should have been granted an evidentiary hearing on the issue of his counsel's ineffective assistance with regard to the stand-your-ground motion, and the Fifth DCA summarily affirmed without a written opinion. *See Nieves v. State*, 189 So. 3d 796 (Fla. 5th DCA 2016) (unpublished table decision).

Nieves then filed a *pro se* § 2254 petition in the United States District Court for the Middle District of Florida, arguing that his trial counsel was ineffective for failing to request an evidentiary hearing on the stand-your-ground motion. Initially, the district court denied the claim as unexhausted and procedurally defaulted, concluding that Nieves failed to properly raise the substantive claim in his appeal from the denial of his Rule 3.850 motion. We granted a COA on the issue of whether the district court erred in concluding the claim was unexhausted and procedurally defaulted, and we reversed and remanded for the district court to consider the issue on the merits, holding that the claim "was fairly presented and exhausted in state court." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 522 (11th Cir. 2019).

On remand, the district court denied the claim on the merits, concluding that the state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts because, as the

state postconviction court found, Nieves could not demonstrate prejudice because of the insufficient evidence of self-defense. The district court denied a COA and Nieves moved for a COA in this Court. We granted a COA on the issue of "[w]hether trial counsel was ineffective for failing to set an evidentiary hearing on Mr. Nieves's stand-your-ground motion." This *pro se* appeal followed.[2]

## II.    Discussion

On appeal, Nieves argues that had his trial counsel moved for an evidentiary hearing on his stand-your-ground motion, the motion would have been granted and the criminal prosecution terminated. Nieves contends that the state postconviction court's decision is not entitled to deference because it misstated the allegations in his Rule 3.850 motion, disregarded key facts in determining that he could not meet his burden of proof with regard to the stand-your-ground motion, and unreasonably applied clearly established federal law. Specifically, Nieves argues that he never conceded in his state postconviction proceedings that the only evidence of self-

---

[2] In a footnote of his *pro se* initial brief, Nieves requests that counsel be appointed to represent him in this appeal and be permitted to file supplemental briefing. There is no constitutional right to counsel in federal habeas proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). However, counsel may be appointed for a financially eligible person in a habeas proceeding if "the interests of justice so require." *See* 18 U.S.C. § 3006A(a)(2). Here, appointment of counsel is not required in the interests of justice. Nieves's appeal involves one issue, and the facts in the record appear to be fully developed and straightforward. The appeal does not appear to present novel legal issues, and Nieves has demonstrated in his *pro se* briefs that he is capable of adequately presenting the essential merits of his position. *See Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (explaining that the key consideration in determining whether to appoint counsel in a civil case "is whether the pro se litigant needs help in presenting the essential merits of his . . . position to the court"). Accordingly, we deny Nieves's request for appointment of counsel.

defense was an alleged defensive wound and a neighbor hearing a male voice saying "stop"; rather, he requested an evidentiary hearing in the state postconviction court on his claim so that he could further demonstrate the basis of his claim.  Nieves further maintains that, in denying his claim, the state postconviction court disregarded: (1) the fact that he was admitted to the hospital with a life-threatening injury and that his statement to police, in which he lacked memory of the victim attacking him, was taken shortly after he underwent surgery and general anesthesia; (2) his potential testimony which could have supported his claim of self-defense; and (3) the specific allegations in his stand-your-ground motion which supported his claim.  Because he maintains that the state court's decision is not entitled to deference, he argues that we should remand the case so that the district court may conduct an evidentiary hearing and consider his claim *de novo*.[3]

We review the district court's denial of a § 2254 habeas petition *de novo*. *Morrow v. Warden, Ga. Diagnostic Prison*, 886 F.3d 1138, 1146 (11th Cir. 2018). Yet the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) also

---

[3] Pursuant to *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011), a § 2254 petitioner is precluded from receiving an evidentiary hearing in the district court on a claim that was adjudicated on the merits by a state court, unless he *first* demonstrates an entitlement to relief under § 2254(d)—meaning that the petitioner must demonstrate the state court's decision was (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of fact on the part of the state court.

governs this appeal, which establishes a "highly deferential standard for evaluating state-court rulings, [and] demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  Thus, under AEDPA, our review of a final state habeas decision is greatly circumscribed, and where a state court has adjudicated a claim on the merits,[4] a federal court may grant habeas relief only if the decision of the state court:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

"[C]learly established law" under § 2254(d) refers to the holdings of the Supreme Court at the time of the relevant state court decision.  *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004).  "A state court acts contrary to clearly established federal law if it confronts a set of facts that are materially

---

[4] Because the Fifth DCA affirmed the postconviction court's decision denying Nieves's ineffective-assistance claim without explaining its reasoning, we "look through" to the last reasoned decision and assume that the Fifth DCA adopted that reasoning.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that when the final state court to adjudicate the merits of a petitioner's claim simply affirms or denies a lower court's decision without explaining its reasoning, the federal habeas court should "look through" to the last reasoned state court decision and assume that the unexplained decision adopted that reasoning).

indistinguishable from a decision of the Supreme Court of the United States and nevertheless arrives at a result different from its precedent." *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012) (quotation omitted).  A state court's decision is based on an unreasonable application of clearly established federal law if it "identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id.* (quotation omitted).  To be clear, the state court's application of federal law "must be 'objectively unreasonable.'  This distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation omitted); *White v. Woodall*, 572 U.S. 415, 419 (2014) (explaining that, for purposes of § 2254(d)(1), the state court's application of clearly established federal law must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice" (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003))).  "A state court's application of federal law is not unreasonable so long as fairminded jurists could disagree on the correctness of the state court's decision." *Kilgore v. Sec'y, Fla. Dep't of Corr.*, 805 F.3d 1301, 1312 (11th Cir. 2015) (quotation omitted).

To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient; and (2) the

9

deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Failure to establish either the deficient performance prong or the prejudice prong is fatal and makes it unnecessary to consider the other. *Id.* at 697. Further, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quotations omitted).

To be clear, "whether defense counsel's performance fell below *Strickland*'s standard" is not the question before a federal habeas court reviewing a state court's decision under § 2254. *Id.* at 101. Accordingly, where, as here, "§ 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether *there is any reasonable argument that counsel satisfied Strickland's deferential standard.*" *Id.* at 105 (emphasis added). With these principles in mind, we turn to Nieves's claim.

At the time of Nieves's trial in 2013, when a defendant raised a question of immunity from criminal prosecution under Florida's stand-your-ground law, the defendant bore the burden of proving at a pretrial evidentiary hearing entitlement

10

to immunity under the statute by a preponderance of the evidence.[5] *Bretherick v. State*, 170 So. 3d 766, 775 (Fla. 2015). Thus, had Nieves's counsel pursued such a hearing, Nieves would have borne the burden of establishing by a preponderance of the evidence that he was entitled to immunity under the statute. *Id.*; *see also* Fla. Stat. §§ 776.012, 776.032(1) (2012).

The state court concluded that Nieves could not meet this burden given the facts of this case, and, therefore, he did not suffer any prejudice from his counsel's failure to pursue an evidentiary hearing. Nieves has failed to establish that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland* or based on an unreasonable determination of the facts.[6] Specifically, in his Rule 3.850 motion for postconviction relief, Nieves referred to only two pieces of evidence in support of his claim—the "undisputed" evidence that he suffered defensive wounds and the testimony from his neighbor that, around the time of the incident, she heard a male voice yell stop. As the state postconviction court found,

---

[5] In 2017, Florida Statute § 776.032 was amended to provide that "[i]n a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof *by clear and convincing evidence* is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1)." Fla. Stat. § 776.032(4) (2017) (emphasis added).

[6] To the extent that Nieves argues that the state postconviction court erred in failing to address the deficient performance prong, his argument fails because *Strickland* makes clear that a court need not address both prongs. *Strickland*, 466 U.S. at 687.

this evidence was far from "undisputed" and was insufficient to establish by a preponderance of the evidence his entitlement to immunity under the statute.

First, as the state court noted, it was not "undisputed" that Nieves's wounds were defensive. Rather, when presented with pictures of a cut on Nieves's finger during cross-examination, the medical examiner gave no definitive testimony concerning the cause of the cut on Nieves's finger, noting only that he could not tell from the pictures provided to him which hand or finger was cut. The medical examiner explained that if the cut was on Nieves's pinkie it would be more consistent with a defensive wound, but if the cut was on Nieves's forefinger, it would be more consistent with his hand slipping on the knife handle as he stabbed the victim. Additionally, there was no evidence presented that the wound to Nieves's neck was defensive, and testimony established that the police responded to Nieves's home after his brother called 911 to report that Nieves had called him and had stated that he was going to commit suicide. Likewise, the small puncture wounds on Nieves's chest were insufficient to establish by a preponderance of the evidence that he acted in self-defense, particularly in light of the medical examiner's trial testimony that there are instances in which a suicidal person inflicts stab wounds to his chest as he "builds up the courage" to increase the depth of the wound and inflict a fatal blow. Accordingly, although Nieves argues that the evidence that his wounds were defensive was "undisputed," his contention is

undermined by the record, and he has not indicated that he had any additional evidence that he would have presented at an evidentiary hearing on his stand-your-ground motion that tended to show by a preponderance of the evidence that the wounds were in fact defensive as opposed to possibly self-inflicted.

Second, with regard to the neighbor's testimony, as the state court noted, while perhaps slightly probative of self-defense, it was insufficient to meet Nieves's burden. Nieves's neighbor testified that her apartment was next door to Nieves's and Pagan's apartment. In the early morning hours of the day of the incident, she heard loud voices coming from Nieves's apartment. At one point she thought she head the male voice say what "sounded like stop, but it was incomplete." She confirmed that she did not hear anything else "immediately after that." On cross-examination, she admitted that she had no idea why the male voice was saying stop, and acknowledged that during a domestic argument, a person could say stop for any number of reasons. Thus, as the state court found, the neighbor's testimony was ambiguous and was insufficient, even when combined with the evidence concerning Nieves's wounds, to establish his entitlement to immunity under the statute.

Third, as the state court noted, Nieves told the officers that he had no recollection of the incident, did not remember Pagan hitting him or attacking him, and that there was no history of physical violence between them. Although Nieves

13

now suggests on appeal that his statement should be given less weight because he made that statement shortly after undergoing surgery and general anesthesia, he has not indicated that he would have presented any evidence at an evidentiary hearing on his stand-your-ground motion that would have contradicted his statement that he did not recall the incident.[7]

Finally, to the extent that Nieves argues that the cursory factual allegations in his stand-your-ground motion—that he was physically attacked and injured by Pagan—would have entitled him to pretrial immunity along with his potential testimony, he provided no evidence to corroborate those allegations, nor has he alleged what his potential testimony at a stand-your-ground hearing would have revealed.

---

[7] Moreover, we note that, prior to the trial, Nieves unsuccessfully moved to suppress his statement to the police, arguing in part that it was not voluntary because he was under the influence of post-surgical medications. The trial court denied the motion, noting that Nieves was questioned several hours after surgery, had not received any medications in at least four hours, and appeared lucid, "coherent, forthcoming and responsive during questioning." Thus, Nieves's statement was properly before the court, and the state postconviction court did not err in considering it when assessing whether Nieves could establish that he was prejudiced by his counsel's failure to pursue an evidentiary hearing on Nieves's stand-your-ground motion.

To the extent that Nieves argues that his statement that he had no recollection of the incident is refuted by the cursory allegations in the stand-your-ground motion itself and his potential testimony, Nieves provided no other evidence to corroborate those allegations. It was Nieves's burden to establish that he was prejudiced by counsel's failure to pursue an evidentiary hearing on the stand-your-ground motion, and it would have been Nieves's burden to establish his entitlement to immunity under the statute had his counsel pursued a hearing. Nieves has not shown that the state court's determination in this case—that he suffered no prejudice from his counsel's failure to pursue an evidentiary hearing on his motion because he would not have been able to meet his burden of proving entitlement to immunity—was based on an unreasonable determination of the facts or was contrary to, or an unreasonable application of, *Strickland*.

14

Thus, in light of the limited and ambiguous evidence concerning self-defense in this case, the state court's determination—that Nieves could not have met his burden of establishing immunity under the statute, and, therefore, his counsel was not ineffective for failing to pursue an evidentiary hearing on the stand-your-ground motion—was not contrary to, or an unreasonable application of *Strickland*. *See* 466 U.S. at 687–88. Nor was it based on an unreasonable determination of the facts. Accordingly, the district court did not err in denying Nieves's § 2254 petition. *See* 28 U.S.C. § 2254(d). Consequently, we affirm.

**AFFIRMED.**