**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAJUAN FLEMMING,
　　　　*Petitioner-Appellant*,

v.

GISELLE MATTESON,
　　　　*Respondent-Appellee.*

No. 19-17038

D.C. No.
3:17-cv-07358-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted December 7, 2021
San Francisco, California

Filed March 4, 2022

Before:　Carlos F. Lucero,\* Sandra S. Ikuta, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke;
Concurrence by Judge Lucero;
Concurrence by Judge VanDyke

---

\* The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[**]

**Habeas Corpus**

The panel affirmed the district court's judgment denying California state prisoner Dajuan Flemming's habeas corpus petition, in a case in which the district court concluded that Flemming's petition was timely but denied his claim on the merits.

The panel found the petition untimely under the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

Flemming initially sought state habeas relief in August of 2014, but his claims were pending in the California state courts until December 2017—well after AEDPA's one-year requirement, which means that his subsequently filed federal claims were timely only if his state habeas petitions were themselves timely. The parties disputed whether Flemming's state habeas petitions were timely filed and thus properly tolled the federal deadline.

A California superior court *sua sponte* held that the habeas claims Flemming filed in that court were untimely, while also concluding that the claims lack merit. After the California Court of Appeal requested and obtained from the government an "opposition to the petition," that court denied the petition in a one-line order stating that "[t]he petition for a writ of habeas corpus is DENIED." Flemming filed a subsequent habeas petition with the California Supreme

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Court, which, without requesting any response briefing from the government, denied that petition with the same one-line order language.

The parties disputed the implication of the California Court of Appeal's silence on timeliness. Relying on *Trigueros v. Adams*, 658 F.3d 982 (9th Cir. 2011), which the district court also relied on, Flemming argued that the California Court of Appeal's silence on timeliness triggers an exception to the general "look through" rule under which the California Court of Appeal's one-line denial of Flemming's petition would presumptively be considered a tacit affirmation of the superior court's finding of untimeliness. Reviewing the procedural history in that case, *Trigueros* determined that the California Supreme Court's decision not to address timeliness meant that it rejected the superior court's holding of untimeliness. Declining to extend *Trigueros* to new contexts, the panel explained that there are at least two materially important distinctions between this case and *Trigueros*, which justify following the Supreme Court's general "look through" presumption: (1) *Trigueros*, which anchored much of its analysis on the particular order practice of the California Supreme Court, does not purport to address how other courts within the California judiciary conduct their habeas orders practice; and (2) the California Supreme Court in *Trigueros* ordered "an informal response on the merits," while the California Court of Appeal here merely requested a general "opposition to the petition," and the government's brief addressed both timeliness and the merits. The panel followed *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016) (en banc), and *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), in deciding not to affirmatively extend *Trigueros* to this case. The panel noted that a recent California Supreme Court case explaining the state habeas review system, *Robinson v. Lewis*, 469 P.3d 414

(2020), is consistent with this conclusion. The panel concluded that the government's failure to present these arguments below does not prevent the panel from addressing these matters in this appeal.

Tenth Circuit Judge Lucero concurred. He agreed with the majority that this case is distinguishable from *Trigueros*, and therefore concurred that Flemming's petition was untimely under AEDPA. He declined to join the sections of the majority opinion discussing the three post-*Trigueros* cases—*Curiel*, *Wilson*, and *Robinson*—which are superfluous to the panel's narrow holding distinguishing *Trigueros*. Judge Lucero disagreed, moreover, with the majority's analysis regarding what these cases say about the scope of the *Trigueros* rule as applied to this dispute.

In a separate concurrence joined by Judge Ikuta, Judge VanDyke wrote to explain why *Curiel*, *Wilson*, and *Robinson* do support the panel's holding. Judge VanDyke wrote that the point in citing these additional authorities is not that any one of them alone mandates the conclusion; each has some differences from the *Trigueros* decision distinguished by the majority opinion, but each is nonetheless helpful in confirming various aspects of the majority's analysis.

## COUNSEL

Jessica S. Heim (argued) and Meghan Natenson, Vinson & Elkins LLP, San Francisco, California, for Petitioner-Appellant.

David M. Baskind (argued), Deputy Attorney General; Peggy S. Ruffra, Supervising Deputy Attorney General;

Jeffrey M. Laurence, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, San Francisco, California, for Respondent-Appellee.

## OPINION

VANDYKE, Circuit Judge:

Dajuan Flemming, a state prisoner, appeals the district court's denial of his petition for writ of habeas corpus. Because we find his petition untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we affirm the district court's judgment denying Flemming's petition.

## I. BACKGROUND

In March of 2009, petitioner Dajuan Flemming visited his cousin in Oakland, California. One evening during his visit, a red Ford Mustang drove by the cousin's house and the car's occupants opened fire, causing multiple injuries to Flemming's friends and family. Flemming refused to provide any identifying information to the investigating police, although it was later revealed that he saw the Mustang as it drove by. Two days later, Flemming and two friends saw the same Mustang outside an elementary school. The driver of the car, Giovanna Warren, together with one of her female friends, was picking up Warren's child at the school. As Warren drove away, Flemming and his two friends pursued the Mustang in their truck. The truck intercepted the Mustang, and Flemming fired a gun multiple times, killing Warren and hospitalizing Warren's friend. Flemming fled the scene and was quickly arrested based on the statement of a witness who had seen him drop a gun.

Flemming was taken into an interrogation room around 8 p.m., where he was held for the night. At approximately 4:30 a.m. the next morning, two police officers interviewed Flemming and he confessed to the shooting. A few hours later, Flemming repeated much of his confession to a deputy district attorney. Flemming was Mirandized before each interrogation.

His case proceeded to a jury trial, and Flemming was found guilty of first-degree murder with special circumstances, as well as attempted premeditated murder. Flemming was sentenced to life without the possibility of parole. Flemming appealed his conviction through the California state court system. The California Supreme Court denied review and the United States Supreme Court denied certiorari in October of 2013.

Flemming then began the process of petitioning for habeas relief, first through the California state courts. On habeas review, the California superior court provided the only reasoned state decision of Flemming's ineffective assistance of counsel claims.[1] The California courts denied Flemming's claims on all counts, with the California appellate courts summarily denying his state habeas claims in one-line orders that offered no rationale for the denial.

Flemming then sought federal habeas relief. The district court concluded that Flemming's petition was timely, but denied his claim on the merits and denied a certificate of appealability. Flemming sought a certificate of appealability

---

[1] Earlier, the California Court of Appeal on direct review provided the only reasoned state decision on the admissibility of Flemming's confessions.

from our court, which our court granted on the three claims currently before this panel.

## II. ANALYSIS

We review the district court's denial of habeas relief de novo. *Demetrulias v. Davis*, 14 F.4th 898, 905 (9th Cir. 2021). We also review de novo whether the habeas petition is timely and qualifies for tolling. *Rudin v. Myles*, 781 F.3d 1043, 1053 (9th Cir. 2015).

Flemming's habeas petition was filed after 1996, so it is governed by AEDPA. Under this "highly deferential standard," *Lindh v. Murphy*, 521 U.S. 320, 334 n.7 (1997), "we must defer to a state's court decision on any claim that was adjudicated on the merits unless the decision was: (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'; or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Demetrulias*, 14 F.4th at 905 (citing 28 U.S.C. § 2254(d)).

This exacting standard demands the petitioner show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Federal habeas relief is not "a means of error correction," but rather is used only to "guard against extreme malfunctions in the state criminal justice systems . . . ." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and quotation marks omitted).

**A.**

Flemming raises numerous arguments regarding the merits of his habeas petition, but we must first decide whether his petition was timely.  When Congress enacted AEDPA, it included a one-year statute of limitations for filing a federal habeas petition challenging a state-court conviction in order to "encourag[e] prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." *Carey v. Saffold*, 536 U.S. 214, 226 (2002); *see also* 28 U.S.C. § 2244(d)(1).  Flemming's conviction became final on October 21, 2013, meaning his deadline to file a habeas petition was October 21, 2014, unless this deadline was tolled by a "properly filed" state habeas petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).  Flemming initially sought state habeas relief in August of 2014, but his claims were pending in the California state courts until December 2017—well after AEDPA's one-year requirement.  This means his subsequently filed federal claims were timely only if his state habeas petitions were themselves timely.  The parties dispute whether Flemming's state habeas petitions were timely filed and thus properly tolled the federal deadline.

Answering this question requires diving into the procedural history in this case.  Flemming filed a habeas petition in the California superior court and merely *asserted* that his petition was timely, even though California law clearly places the burden of proof on the petitioner to *prove* timeliness.  *See, e.g.*, *In re Robbins*, 959 P.2d 311, 317 (1998); *In re Sanders*, 981 P.2d 1038, 1043 (1999).  The government did not challenge the timeliness of Flemming's petition, but the superior court *sua sponte* held his habeas claims were untimely, while also concluding that the claims lack merit.

Flemming then filed a petition with the California Court of Appeal, this time arguing at length that his state habeas petition was both timely and meritorious. The California Court of Appeal responded by requesting an "opposition to the petition." The request for an opposition brief did not specify any particular issue(s) the court was interested in (e.g., "on the merits" or "on timeliness"), and in its opposition the government presented argument on all the relevant issues—i.e., that Flemming's petition was both untimely and without merit.

The California Court of Appeal ultimately denied Flemming's petition in a one-line order simply stating that "[t]he petition for a writ of habeas corpus is DENIED." Flemming filed a subsequent habeas petition with the California Supreme Court, which also denied it with the same one-line order language ("[t]he petition for writ of habeas corpus is denied,") without requesting any response briefing from the government.

The parties dispute the implication of the California Court of Appeal's silence on timeliness. The government argues that the general presumption, that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground," governs here. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). This would mean the California Court of Appeal's one-line denial of Flemming's petition should be considered a tacit affirmation of the superior court's finding of untimeliness. And "[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (quotation marks omitted).

But the "look through" presumption, like all presumptions, can be rebutted.  The Supreme Court recently explained that the "look through" presumption can be rebutted by "showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed."  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  Flemming argues that the California Court of Appeal's silence on timeliness triggers this exception to the general rule.  Pointing to the California Court of Appeal's silence as the sole basis for rebutting the "look through" presumption may seem like an underwhelming argument, but Flemming relies heavily on *Trigueros v. Adams*, 658 F.3d 983 (9th Cir. 2011) as supporting his claim, which the district court also relied on when it concluded that Flemming's petition was timely.

*Trigueros* evaluated a series of habeas petitions filed in the California state courts and held that the California Supreme Court's ruling, which only stated "[t]he petition for writ of habeas corpus is denied," operated as an implicit *rejection* of the superior court's prior holding of untimeliness.  *Trigueros*, 658 F.3d at 986.  There, the superior court had found the habeas petition untimely, and Trigueros then petitioned the California Court of Appeal.  *Id.* That petition was denied by the California Court of Appeal in a single sentence ruling without any reasoning or request for further briefing, and Trigueros then petitioned the California Supreme Court.  *Id.*  The California Supreme Court ordered "an informal response on the merits" from the government.  *Id.*  After briefing, the California Supreme Court denied Trigueros's petition in the single sentence ruling quoted above, which did not address timeliness or the merits of the petition.  *Id.*  When reviewing this procedural

history, *Trigueros* determined that the California Supreme Court's decision not to address timeliness meant that it rejected the superior court's holding of untimeliness. *Id.* at 990.

*Trigueros* reached this conclusion despite acknowledging that the United States Supreme Court had "instructed us that we are not to presume that a California state court's denial on the merits means that a petition was timely." *Id.* at 989. And where the "California Supreme Court order . . . does not contain the words 'on the merits,'" *Trigueros conceded* that "it is *even less likely* the California Supreme Court had considered the petition timely . . . ." *Id.* at 990 (emphasis added) (citations omitted). But those instructions notwithstanding, *Trigueros* relied on two interdependent considerations present in that case to conclude the California Supreme Court found the petition timely. First, *Trigueros* cited to a footnote from a 1998 California Supreme Court opinion where the California Supreme Court explained certain aspects of its orders practice for addressing habeas petitions:

> [W]hen respondent asserts that a particular claim or subclaim should be barred . . . [because it] is untimely, and when, nevertheless, our order disposing of a habeas corpus petition does not impose the proposed bar or bars as to that claim or subclaim, this signifies that we have considered respondent's assertion and have determined that the claim or subclaim is not barred on the cited ground or grounds.

*Id.* (quoting *In re Robbins*, 959 P.2d at 340 n.34).

*Trigueros* seemed to acknowledge that this footnote alone was not enough to rebut the general "look through" presumption established by the United States Supreme Court when it stated "we do not presume that the California Supreme Court's order summarily denying Trigueros's petition automatically means that the Court considered and found Trigueros's petition timely." *Id.* Despite this, *Trigueros* went on to say that "[t]here are, however, compelling factual circumstances in this case signaling that the California Supreme Court did consider and reject the State's timeliness argument." *Id.* The primary "compelling factual circumstance[]" identified in *Trigueros* was that "the California Supreme Court requested informal briefing on the merits." *Id.* *Trigueros* found the California Supreme Court's request for merits briefing both "highly significant" and "very important." *Id.* at 990, 991. After reviewing the requested briefing, the California Supreme Court ultimately denied the petition without addressing timeliness. *Id.* at 986. Based on these conditions—the combination of an earlier footnote from the *Robbins* case together with the California Supreme Court asking for "merits briefing"—*Trigueros* concluded "the California Supreme Court did not find a timeliness procedural bar" and therefore this court reached the merits of Trigueros's federal habeas petition. *Id.* at 991.

**B.**

*Trigueros* is binding law and Ninth Circuit panels are generally bound by precedent established by previous panels. But that rule does not obligate us to affirmatively *extend Trigueros*'s analysis to new contexts, including here. There are at least two materially important distinctions between this case and *Trigueros*, which justify following the Supreme Court's general "look through" presumption.

First, *Trigueros* centers around a ruling from the California Supreme Court, while the case at hand centers around a ruling from the California Court of Appeal. This distinction may not be critical in some circumstances, but it was undeniably important in *Trigueros*. *Trigueros* anchored much of its analysis on the particular order practice of the California *Supreme Court* as described in *Robbins*. The California Supreme Court *Robbins* opinion cited in *Trigueros* explained that the California Supreme Court's orders practice for habeas petitions was specific to "*our* order practice." *In re Robbins*, 959 P.2d at 340 n.34 (emphasis added). That part of the opinion explains how the California Supreme Court itself conducts its own order practice for habeas petitions, but does not purport to address how the other courts within the California judiciary— including the intermediate California Court of Appeal— conduct their habeas orders practice.

Second, the California Supreme Court in *Trigueros* ordered "an informal response *on the merits*," *Trigueros*, 658 F.3d at 986 (emphasis added), while the California Court of Appeal here merely requested a general "opposition to the petition." This distinction is important. As mentioned above, *Trigueros* gave great weight to the fact that the California Supreme Court requested briefing *on the merits*. *See id.* at 990–91.

Under *Trigueros*'s logic, by specifying that the response be on the merits, the California Supreme Court implicitly indicated that it was not planning to rely on the timeliness bar to resolve the case. But here, the California Court of Appeal did *not* limit its request for the government's brief to the merits, and the government predictably addressed both the timeliness and merits of Flemming's petition. To the extent we can divine any intent from the California Court of

Appeal when it requested general opposition to the petition instead of a response only on the merits, it seems that it likely did this because it was, in fact, interested in the timeliness arguments. Flemming himself points out that, up to this point, no court had received briefing from the government on timeliness. These facts show that the logic in *Trigueros* about a court implicitly deeming a petition timely when it requests focused briefing "on the merits" does not apply here, since there are multiple reasons *in this case* to think the California Court of Appeal was particularly interested in timeliness. There is no reason to think the California Court of Appeal was only interested in the merits.

## C.

We are not the first panel to reach this conclusion. The Ninth Circuit, sitting en banc, has already declined to extend *Trigueros*'s holding about the California Supreme Court to the California Court of Appeal. In *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016) (en banc), we did not extend the *Trigueros* presumption to a California Court of Appeal habeas petition denial that offered no comment or explanation. In *Curiel*, like here, a habeas petition was denied by the superior court because it was both untimely and lacked merit. *Curiel*, 830 F.3d at 867. The California Court of Appeal denied the subsequent petition without comment, and the California Supreme Court then denied the petition in a summary disposition, but (unlike here or *Trigueros*) also included citations to two cases. *Id.* The question presented in *Curiel* was whether the California Supreme Court's citation to the two cases meant that *that* court had issued the "last reasoned decision," meaning the superior court's earlier decision was rendered irrelevant for purposes of federal habeas review.

We concluded that the California Supreme Court's citation to the cases did in fact mean the California Supreme Court had issued the last reasoned decision on the timeliness of Curiel's state habeas petitions, and that its citation to those "merits" precedents, without citing to any "timeliness" precedents, indicated that it did not deny the state habeas petition on timeliness grounds. While that part of *Curiel* is not particularly pertinent to this case, what is relevant for our purposes is how we characterized the California Court of Appeal's ruling. The California Court of Appeal in *Curiel*, like here, denied the petition in a one-line summary order that did not address timeliness (or anything else). And, also like here, the superior court had found the petition untimely. Against this procedural backdrop—the same procedural backdrop in this case—we stated that "the California Supreme Court overruled the prior untimeliness rulings of the Superior Court *and Court of Appeal*." *Id.* at 871 (9th Cir. 2016) (emphasis added). This court in *Curiel* thus determined the meaning of the California Court of Appeal's silence on timeliness by applying the general "look through" presumption, concluding that the California Court of Appeal's summary denial *was* a tacit affirmation of the superior court's finding of untimeliness.

That is the same situation presented in this case. *Curiel*, an en banc case decided after *Trigueros*, declined to extend the holding of *Trigueros* to the California Court of Appeal. To be sure, the *Curiel* decision does not explicitly say *why* we deemed the "silent" Court of Appeal's decision as having adopted the superior court's untimeliness conclusion. But there is no question that we did so—repeatedly. *See* 830 F.3d at 869 ("the contrary rulings by the Superior Court and Court of Appeal"); *id.* at 870 (referencing "the lower courts' untimeliness determinations"). For all these reasons,

we follow our holding in *Curiel* in deciding not to affirmatively extend *Trigueros* to this case.

## D.

After our ruling in *Trigueros*, the Supreme Court has continued to apply the general "look through" presumption, including in a case with important similarities to this case. The Supreme Court issued *Wilson v. Sellers* seven years after *Trigueros*, but contra-*Trigueros*, applied the "look through" presumption.[2]

*Wilson* evaluated a Georgia state prisoner's habeas petition. After he was convicted and exhausted his direct appeals, Wilson sought habeas relief in state court. *Wilson*, 138 S. Ct. at 1192. The Georgia Superior Court rejected his ineffective assistance of counsel claim on the merits, and the Georgia Supreme Court denied his application to appeal the ruling "without any explanatory opinion." *Id.* at 1193. As the habeas petition progressed through the federal courts, a debate arose over how the federal district court should determine what grounds the state court relied upon in denying the petition. Importantly, while the *Wilson* case was proceeding through the federal courts, the Georgia Supreme Court clarified that "its summary decisions should not be read to adopt the lower court's reasoning." *Id.* at 1196 (referencing *Redmon v. Johnson*, 809 S.E.2d 468, 472 (2018)). This issue ultimately made its way to the United

---

[2] We need not decide whether *Wilson* effectively overruled *Trigueros* under the framework established in *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), since it is sufficient for present purposes to conclude that *Trigueros* should not be extended to the different circumstances presented in this case.

States Supreme Court, and the Supreme Court reaffirmed the general "look through" presumption from *Ylst*. *Id.* at 1192.

Relevant to this case are the arguments the Supreme Court *rejected* to reaffirm the "look through" presumption. The Court's majority specifically rejected the argument "that the Georgia Supreme Court's recent [*Redmon*] decision . . . rebuts the ["look through"] presumption in Georgia because that court indicated its summary decisions *should not be read* to adopt the lower court's reasoning." *Id.* at 1196 (emphasis added). Notwithstanding that the Georgia Supreme Court had *itself* explained that its summary denials should not be interpreted to adopt the lower court's rationale, according to the *Wilson* majority, "[t]his misses the point." *Id.*

This history and context demonstrates that the Supreme Court, post-*Trigueros*, has specifically *rejected* the argument that the general "look through" presumption is rebutted by internal state procedures for a state supreme court indicating that its summary, unreasoned orders do *not* adopt the lower court's rationale.[3] This court therefore elects to follow the rationale laid forth in *Wilson* and apply the "look through" presumption to the facts before us.

### E.

A recent California Supreme Court case explaining the state habeas review system is consistent with this conclusion. In *Robinson v. Lewis*, decided nine years after *Trigueros*, the California Supreme Court took the

---

[3] The fact that the state appellate court received opposition briefing on the merits from the government before summarily affirming the lower court's habeas denial does not distinguish *Wilson* either, since that is precisely what happened in *Wilson*.

opportunity to further elaborate on its timeliness doctrine for habeas petitions.  The California Supreme Court explained:

> The Ninth Circuit is uncertain how the California courts treat the time gap between the denial of a petition for a writ of habeas corpus in a lower California court and the filing of a new petition in a higher California court raising the same claims for purposes of determining whether a claim was timely presented.  Accordingly, it asked us to explain how California law treats what we will call "gap delay."

*Robinson v. Lewis*, 469 P.3d 414, 416 (2020).  The California Supreme Court explained that the Ninth Circuit had erroneously "assumed that a habeas corpus petition filed in a higher court constitutes a challenge to the lower court's denial of the previous petition.  In fact, it is a *new* petition invoking the higher court's *original* jurisdiction." *Id.* at 419.  This means a "Court of Appeal that considers a new petition does not directly review the superior court's ruling but makes its own ruling." *Id.* at 420.

The now-clarified structure of habeas petitions within the California state system only confirms that *Trigueros*'s assumption—published well before *Robinson*—is not applicable here.  The California Supreme Court addressed the Ninth Circuit's confusion about its habeas practice by offering further clarification in *Robinson*.  As explained in *Robinson*, the California Supreme Court has clarified that each habeas petition filed in a state court is a new petition invoking that court's original jurisdiction, and is not related to any habeas petition previously pending before a lower state court.  *Id.* at 419.  Therefore, it is unreasonable to

interpret the California Court of Appeal's summary denial of a new habeas petition after requesting an opposition brief as *implicitly* rejecting—much less overruling—a trial court's prior ruling on the timeliness of an entirely separate habeas petition. We take notice of that clarification, which further validates our ruling that Flemming's petition was untimely.

## F.

Flemming argues in his reply brief that the government waived the argument that *Trigueros* is inapplicable to the facts of this case by not raising it in the district court, though Flemming concedes that the government did argue that *Trigueros* is flawed and inconsistent with *Wilson*.[4] While not the norm, circuit precedent authorizes this court to reach issues not presented by the parties below but raised on appeal. *See, e.g.*, *Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016); *see also Bolker v. Comm'r of Internal Revenue*, 760 F.2d 1039, 1042 (9th Cir. 1985) ("As a general rule, we will not consider an issue raised for the first time on appeal . . . although we have the power to do so . . . .").

*Bolker* offers reasons why a court could choose to address issues not properly raised below, including "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker*, 760 F.2d at 1042. This exception applies to the issues raised here. The legal significance of a reviewing court calling for a brief

---

[4] The government did argue that *Trigueros* is distinguishable because of the "briefing on the merits" versus "opposition to the petition" line of reasoning in its answering brief before our court. It did not raise that issue in the district court, however, and instead conceded that "*Trigueros* is controlling . . . ."

on the merits versus a general opposition to the petition for purposes of the "look through" presumption is a legal question that can be fully resolved with the record as currently developed.  The same holds true for the potentially relevant distinction between the California Supreme Court and the California Court of Appeal for purposes of applying *Trigueros*, as well as the significance and applicability of the Supreme Court's *Wilson* case.  The scope and breadth of *Trigueros* is a legal question, and one readily decided within the current record.  For these reasons, we conclude that the government's failure to present these arguments below does not prevent us from addressing these matters in this appeal.

## III.  CONCLUSION

Flemming's petition was untimely for the reasons stated herein.  The district court's judgment denying the petition is therefore **AFFIRMED**.

---

LUCERO, Circuit Judge, concurring:

I agree with the majority that this case is distinguishable from *Trigueros v. Adams*, 658 F.3d 983 (9th Cir. 2011), and therefore concur that Dajuan Flemming's federal habeas petition was untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In particular, the California Court of Appeal's request for general briefing in this case does not—unlike the merits briefing request in *Trigueros*—constitute "strong evidence" of an intent to reject the lower court's procedural determination and deny the petition solely on the merits.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  I thus agree with the majority's dispositive conclusion in section II.B that *Trigueros* does not control this case and, as a result, we must apply the look-

through presumption to the Court of Appeal's summary dismissal. That should end the matter.

Accordingly, I decline to join sections II.C-E of the majority opinion discussing three post-*Trigueros* cases: *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016); *Wilson v. Sellers*, 138 S. Ct. 1188 (2018); and *Robinson v. Lewis*, 469 P.3d 414 (Cal. 2020). These cases are superfluous to our narrow holding distinguishing *Trigueros*. Moreover, I disagree with the majority's analysis regarding what these cases say about the scope of the *Trigueros* rule as applied to this dispute.

First, the majority is incorrect to claim that *Curiel* "already declined to extend *Trigueros*'s holding" to summary dismissals by the California Court of Appeal. (Op. at 14.) The majority hinges this assertion on a few passing statements in *Curiel* that assumed the Court of Appeal's unreasoned denial of a habeas petition adopted the lower court's untimeliness holding. From these statements, the majority concludes that *Curiel* presents "the same procedural backdrop" as this case, and it therefore opts to "follow" *Curiel* by not applying *Trigueros* to the Court of Appeal's summary denial. (Op. at 15–16.) But this case plainly does not present the "same procedural backdrop" as *Curiel*. That is because the Court of Appeal in *Curiel* never requested a response to the habeas petition prior to its summary denial, nor did the state submit one. *See* Case Docket, *In re Freddy Curiel*, No. G042312 (Cal. Ct. App. Aug. 6, 2009).

Conversely, the Court of Appeal in this case—like the California Supreme Court in *Trigueros*—did request briefing. This request was essential to *Trigueros*' holding. *See Trigueros*, 658 F.3d at 990–91. Without such a request, there were no "compelling factual circumstances" in *Curiel*

signaling that the Court of Appeal had rejected the lower court's timeliness holding. *Id.* at 990. In other words, there was no reason to consider whether the *Trigueros* rule applied to the Court of Appeal's summary denial in *Curiel*, and no indication this court did so. *Curiel* thus says nothing about the application of *Trigueros* to summary dismissals by the Court of Appeal. My colleagues' assertions to the contrary are unpersuasive.

The majority opinion's analysis of *Wilson* is similarly inapt. While *Wilson* discussed the relevance of internal state court guidance for the purposes of applying the look-through presumption, *see* 138 S. Ct. at 1196, there is no such guidance from the California Courts of Appeal in this case.[1] Rather, the district court below held that *Trigueros* controlled based solely on the Court of Appeal's briefing request. Thus, the passages of *Wilson* discussed by the majority bear no relation to our holding that *Trigueros* does not control this case.

Finally, I disagree that *Robinson* has "clarified" the structure of California's habeas practice in a manner relevant to this appeal. (Op. at 18.) *Robinson* held that a delay of 120 days or less between the denial of a California habeas petition and the filing of a new petition with a higher state court will not constitute a "substantial delay" sufficient to render that petition untimely. *Robinson*, 469 P.3d at 424. While the majority emphasizes a passage from *Robinson* stating that a California habeas court "does not directly review the [lower] court's ruling but makes its own ruling," *id.* at 420, this statement is consistent with this circuit's

---

[1] Though the California Supreme Court has provided guidance on how its summary habeas denials should be interpreted, *see Trigueros*, 658 F.3d at 989-90, the California Courts of Appeal have not.

treatment of California's habeas system. *See, e.g.*, *Campbell v. Henry*, 614 F.3d 1056, 1060–61 (9th Cir. 2010) (acknowledging that "in formal terms the Court of Appeal had before it a new original petition and not an appeal," while also holding that the Court of Appeal's decision that a claim was timely necessarily meant "that claim was timely when it was before the lower court").

Moreover, the United States Supreme Court has said that while California's habeas system "does not require, technically speaking, appellate review of a lower court determination," we nonetheless must treat it "as *similar* to other States" for AEDPA purposes because "its 'original writ' system functions like the 'appeal' systems of those other States." *Carey v. Saffold*, 536 U.S. 214, 221, 225 (2002) (emphasis in original); *see also Curiel*, 830 F.3d at 870 n.3 ("[I]t is well settled that California's original writ system is sufficiently analogous to appellate review systems in other states, such that a higher state court may overturn a lower court's ruling on a particular issue.").[2] I therefore cannot agree with the majority's insinuation that *Robinson* has altered our understanding of California's habeas practice

---

[2] The majority quotes language from *Robinson* stating that the Ninth Circuit had wrongly "assumed that a habeas corpus petition filed in a higher court constitutes a challenge to the lower court's denial of the previous petition." (Op. at 18 (quoting *Robinson*, 469 P.3d at 419).) However, that passage was in reference to the phrasing of the question certified by the Ninth Circuit to the California Supreme Court. *See Robinson*, 469 P.3d at 417, 419. As discussed above, this circuit has consistently recognized the formal differences of California's "original writ" system, while also holding that system must be treated functionally the same as an appellate system under AEDPA. *See, e.g.*, *Curiel*, 830 F.3d at 870 n.3.

or has any bearing on the application of *Trigueros* to this case.

I reiterate that our holding today is a narrow one. The factual circumstances sufficient in *Trigueros* to rebut the look-through presumption are not present in this case. I would stop there. Because the majority fails to do so—and because its dicta is unconvincing—I cannot join its opinion in full.

VANDYKE, Circuit Judge, with whom IKUTA, Circuit Judge, joins, concurring:

Judge Lucero has penned a short concurrence explaining that, in his view, *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016) (en banc), *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), and *Robinson v. Lewis*, 469 P.3d 414 (Cal. 2020), are "superfluous" to the court's holding today. I write to briefly explain why these cases do in fact support our holding. To be clear, the point in citing these additional authorities is not that any one of them alone mandates our conclusion. Each of these cases of course has some differences from the *Trigueros* decision distinguished by the majority opinion, but each is nonetheless helpful in confirming various aspects of our analysis.

First, Judge Lucero rightly notes that the *Trigueros* state court requested briefing on the merits, while the *Curiel* state court did not request any briefing. But our case falls somewhere in between, as the California Court of Appeal here requested only a general "opposition to the petition," without any reference to the "merits" as in *Trigueros*. Moreover, even the distinction emphasized by Judge Lucero

supports our conclusion that the state court's request for briefing (including both the request itself, and type requested) was a critical underpinning of the result in *Trigueros*. Put simply, if—as Judge Lucero posits—*Curiel* refused to apply *Trigueros* to the California Court of Appeal's summary decision in that case because of briefing differences between those two cases, that supports our reliance here on briefing differences between this case and *Trigueros*.

Second, Judge Lucero argues that our reliance on the Supreme Court's *Wilson* recent decision is "inapt" because, unlike with the Georgia Supreme Court, there is no internal guidance from the California Court of Appeal. No judge disputes this, but Flemming explicitly argued that the California Supreme Court's presumption should extend to the California Court of Appeal. Therefore, *Wilson* supports that, *even if* the California Supreme Court's internal guidance extended to the California Court of Appeal, it would still not be enough to rebut the general "look through" presumption and require extending *Trigueros* to this case.

Finally, Judge Lucero argues that *Robinson* has not "altered" our understanding of California's habeas review system and is therefore irrelevant to our application of *Trigueros* here. But *Robinson* is helpful because in reemphasizing that each higher California state court addresses a *new* habeas petition and makes its own ruling, *see Robinson*, 469 P.3d at 420, it reinforces the oddity of treating a request for briefing by a later court as indicating *anything* about timeliness.

Again, the point of citing these post-*Trigueros* cases is not to say they necessarily independently compel the conclusion reached by the majority opinion, but rather to say that each case, in different ways, adds support to the ultimate

conclusion that *Trigueros* should not be extended to the case before us.